[No. 9911. Department One. December 16, 1911.]

PATRICK BARKER, *Appellant*, v. R. SARTORI *et al.*, *Respondents.*[1]

BILLS AND NOTES—BONA FIDE HOLDERS—DEFENSES—WANT OF CONSIDERATION. Negotiable promissory notes executed by the maker cannot be held void for want or illegality of consideration, when in the hands of holders for value, before maturity, without notice of any defect.

BILLS AND NOTES—NEGOTIABILITY—STATUTES—CONSTRUCTION. A note is negotiable, although due in installments without showing upon its face the amount due at maturity, under Rem. & Bal. Code, § 3392, defining a negotiable instrument to be one that contains an unconditional promise to pay a sum certain in money, and § 3393, providing that the sum is certain although it is to be paid with interest, by stated installments, with provision that all shall become due on any default, and for costs of collection or attorney's fees if not paid on maturity.

BILLS AND NOTES—NEGOTIABILITY—PROVISIONS OF MORTGAGE. The provisions of a mortgage securing a negotiable promissory note are not imported into the note so as to affect its negotiability.

BILLS AND NOTES—TRANSFER—BONA FIDE PURCHASERS—NOTICE OF DEFECT. The purchasers of notes secured by mortgages are not put upon inquiry as to want of consideration from the fact that the property was not worth the face of the note, or that a note was indorsed by a trustee of the payee, where it appears that they either looked at the property and were satisfied that it was good, or knew the payee and the trustee who had authority to make the indorsement, and relied on the indorsement, their only duty being to inquire into the regularity of the indorsement.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 29, 1911, upon findings in favor of the defendants, in a proceeding to determine the

[1]Reported in 119 Pac. 611.

application of condemnation awards, after a trial before the court without a jury. Affirmed.

*Howard O. Durk* and *A. R. Rutherford*, for appellant.

*Bausman & Kelleher*, for respondent Seattle National Bank.

MOUNT, J.—In the year 1910, the city of Seattle began proceedings to condemn certain lots for park purposes. Among these were lots 6 and 7, block 1, Columbia Terrace addition, and lots 7, block 24, of Squire's Lakeside addition. These lots were owned by Patrick Barker, who was made a party to the condemnation proceeding. Upon a trial of the condemnation case, Mr. Barker was awarded $2,200 for the lots in Columbia Terrace addition, and $1,013 for the lots in Squire's Lakeside addition.

After these awards were made and the money paid into court, R. Sartori, who claimed to hold a mortgage lien on lot 7, block 4, above stated, for $1,000 and interest, and the Seattle National Bank, which claimed to hold a mortgage on the other two lots for $2,200 and interest, were brought into the case upon petition of the city. These parties thereupon set up their mortgages, claiming to be purchasers of the notes secured thereby, before maturity, for value, and in good faith, and petitioned the court for the application of the funds to the payment of their respective mortgage liens. Patrick Barker answered these petitions, denying execution of the instruments and alleging affirmatively that both were void for want of consideration. Upon issues thus made, the trial court was of the opinion that Barker executed the notes and mortgages which were liens upon the premises covered by the respective mortgages, and that the petitioners were holders in good faith before maturity, and therefore entered orders directing the application of the funds remaining, after certain prior liens were paid, to the satisfaction of the petitioners' claims. Mr. Barker has ap-

pealed from these orders. Both cases depend upon the same state of facts, and were tried as one.

Appellant argues that the notes and mortgages given for their security are void, because they were executed without consideration passing to Mr. Barker. It may be true that no consideration passed, but the court found, and the evidence is clearly sufficient to show, that Mr. Barker executed the notes and mortgages. It is not disputed that Mr. Sartori and the Seattle National Bank acquired the paper for value before maturity, without notice of any defect or want of consideration between the makers and the original payee. It is clear, therefore, that these respondents are holders in due course, provided the paper is negotiable. *Gray v. Boyle*, 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042. In that case the court quoted the rule in such cases from *Vallett v. Parker*, 6 Wend. 615, as follows:

"Wherever the statutes declare notes void, they are, and must be so, in the hands of every holder; but where they are adjudged by the court to be so, for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had notice of, the consideration."

This is decisive of that question.

It is next argued that the paper was not negotiable. The notes contain similar provisions. One of them recites:

"Two years after date, without grace, for value received, I promise to pay to the order of H. P. Wolcott the sum of $1,000, with interest at the rate of nine per cent per annum from date until paid. Interest to be paid semi-annually, and if not so paid to bear interest after delinquency until paid at the rate of nine per cent per annum."

The notes were secured by mortgages which contain stipulations requiring the maker to pay, in addition to the principal debt and interest, such sums as the mortgagee may be required to incur for insurance, taxes, assessments, and charges on the land, etc. It is argued, (1) that the provision in the notes renders them uncertain as to the amount

to be paid at maturity, because, if the interest is not paid at certain fixed periods, such past-due interest bears interest; and (2) that the mortgages bearing the same date as the notes are assumed to have been made at the same time as the notes, and the two instruments must be construed as one contract, and therefore are entirely uncertain as to the amounts to be paid at maturity. Our statute, at § 3392, Rem. & Bal. Code, defines a negotiable instrument, and declares that it "must contain an unconditional promise or order to pay a sum certain in money." The next section provides:

"§ 3393. The sum payable is a sum certain within the meaning of this act, although it is to be paid—(1) with interest; or (2) by stated installments; or (3) by stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due; or . . . (5) with costs of collection or an attorney's fee, in case payment shall not be made at maturity."

It is apparent that the notes in this case were negotiable instruments within this rule, because they were in writing signed by the maker, and contain an unconditional promise to pay a sum certain in money. The fact that the interest was payable in installments does not render the notes uncertain, for the statute expressly provides that payments may be made by installments. This applies as well to interest as to the principal. The argument made by counsel, that an installment may not be paid when due and therefore the instrument would not show upon its face what amount would be due at maturity, would apply equally to the principal where payable by installments. There are cases which hold that notes like these are uncertain and therefore not negotiable, as for example, *Cornish v. Woolverton*, 32 Mont. 456, 81 Pac. 4, 108 Am. St. 598, and *Davis v. Brady*, 17 S. D. 511, 97 N. W. 719; but those were cases which were based upon statutory provisions unlike ours.

We are satisfied that the provisions of the mortgages were not imported into the notes so as to render them non-

negotiable. The rule is well stated in *Thorp v. Minedman*, 123 Wis. 149, 101 N. W. 417, 107 Am. St. 1003, 68 L. R. A. 146, as follows:

"The rule that instruments are to be construed together does not lead to this result. Construing together simply means that, if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments, and to provide for entirely different things, as in the very case before us. The note is given as evidence of the debt and to fix the terms and time of payment. It is usually complete in itself—a single, absolute obligation. The purpose of the mortgage is simply to pledge certain property as security for the payment of the note. The agreements which it contains ordinarily have no bearing on the absolute engagements of the note, but simply relate to the preservation of the security given by its terms; such as the payment of taxes, the insurance of houses, and the like. While the two instruments will be construed together whenever the question as to the nature of the actual transaction becomes material, this does not mean that the mortgage becomes incorporated into the note, nor that the collateral agreements to pay the taxes, or to insure the property, or that the mortgagee might insure in case of default by the mortgagor and have an additional lien therefor, become parts of the note. These agreements pertain to another subject, namely, the preservation intact of the mortgaged property. The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may disregard the mortgage entirely, and sue and recover on his note; and the fact that a mortgage had been given with the note,

containing all manner of agreements relating simply to the preservation of the security, will cut no figure."

See, also, *Farmers' Nat. Bank of Tecumseh v. McCall*, 25 Okl. 600, 106 Pac. 866; *American Sav. Bank & Trust Co. v. Helgesen*, 64 Wash. 54, 116 Pac. 837.

It is next argued that the circumstances under which the respondents acquired the paper were sufficient to put them upon notice of the invalidity of the notes; (1) because the property mortgaged was not worth the face of the notes at the time the mortgages were given, and (2) that the notes were not indorsed by the payee, but were indorsed: "H. P. Walcott, H. W. Fisher, Trustee." The evidence shows that Mr. Sartori looked at the location of the lot covered by his mortgage at the time he purchased the note, and was satisfied that the property was good for the amount of the note at that time. There is no evidence that the bank made any examination of the property, but the officers of the bank knew the payee and her trustee and relied upon the indorsement. The evidence also shows that H. W. Fisher was a trustee for the payee, and was authorized to make the indorsements as they were made. The only duty which devolved upon the purchasers was to inquire into the regularity of the indorsement, for this was the only thing upon the face of the notes which did not appear to be regular. The notes in all other respects were regular, and the purchasers were authorized to rely upon the face of the papers unless they had notice of some irregularity. There is nothing in the evidence to show any such notice.

The judgment must therefore be affirmed.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.