DAVID LYNCH, Appellant, v. A. J. SCHEMMEL, Appellee.

**TRIAL:** Method of Trial—Prayer as Controlling Transfer to Equity.

1   The mere *prayer* of a cross-petition for equitable relief, in an action properly commenced at law, does not, of itself, give the pleader a right to a transfer to equity. The issues and the nature thereof presented by the cross-petition control. So held where the issues presented by the cross-petition were (a) want of consideration and (b) duress, and the prayer was for "cancellation." Transfer to equity refused. Sec. 3435, Code, 1897.

Note. Analogous points classified in index to Vols. 168, 169, under "Actions." Hereafter, see "Trial." Reporter.

TRIAL: Method of Trial—Remedy at Law as Bearing on Transfer.
2 When a trial at law will adjudicate every issue, trial in equity
will be denied. Sec. 3435, Code, 1897.

PRINCIPLE APPLIED: See No. 3.

TRIAL: Method of Trial—Issues Cognizable Only in Equity—Denial
3 of Jury Trial. A defendant may not prevent a jury trial in a
law action by praying for equitable relief in a cross-petition which
presents no issues "heretofore exclusively cognizable in equity,"
but only presents issues which are fully available to the defend-
ant as a defense at law. Sec. 3435, Code, 1897.
DEEMER, J., dissents.

PRINCIPLE APPLIED: Plaintiff brought an action at law on
four promissory notes (assumed by the court on appeal to be
negotiable), *all growing out of the same transaction.* When the
suit was commenced, none of the notes were, on their face, due, but
each provided that it should fall due if defendant removed from
the county. Plaintiff alleged that defendant had so removed. De-
fendant specially joined issue on this latter allegation. Before the
case came to trial, but after one of the notes was due by its terms,
irrespective of the removal clause, defendant pleaded (a) want of
consideration and (b) duress, and prayed (1) for cancellation and
(2) for injunction to restrain transfer of the notes or bringing
future action thereon. Defendant then moved for transfer of the
equity issues (which necessarily involved the entire case) to the
equity calendar for trial. Thereupon, plaintiff voluntarily placed
the notes in the hands of the court to abide the outcome of the
suit. *Held,* none of the issues presented by defendant were
"heretofore exclusively cognizable in equity," were all fully
available to the defendant in the law action, and transfer should
be refused.

*Appeal from Kossuth District Court.*—N. J. LEE, Judge.

SATURDAY, JANUARY 22, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION at law upon four promissory notes, aggregating
$10,000. The answer admitted the execution of the notes,
but denied that the same were due, and set up an affirmative
defense thereto, which will be set forth in the body of the
opinion. The prayer of the answer asked that the plaintiff

be enjoined from negotiating the notes to third parties, and that he be enjoined from bringing further suits thereon, and that he be ordered to surrender the notes, and that the same be canceled by the court.   Upon the filing of such answer, the defendant filed also a motion asking "the court to set the action down for trial on the equitable issues and the issues arising upon the cross-petition to be first tried."   The plaintiff filed a motion to strike the defendant's motion.   The trial court overruled the plaintiff's motion to strike, and sustained the motion of the defendant.   From this order, the plaintiff has appealed.

*Files & Maher, Harrington & Dickinson*, and *Kenyon, Kelleher, O'Connor & Price*, for appellant.

*E. A. Morling*, and *Sullivan & McMahon*, for appellee.

Evans, C. J.—Concededly, the practical effect of the ruling of the trial court was to set down the case to be heard in its entirety upon the equity side of the court, and to deprive the plaintiff of the right of jury trial upon any issue in the case.   While the order in form only ordered the trial of the equitable issues first, the argument in support of the ruling is that such trial will necessarily dispose of every issue in the case.

This action was commenced in January, 1914.   The notes sued on did not appear on their face to be due when the action was brought.   The notes were drawn to fall due respectively on the following dates:   March 15, 1914; December 1, 1914; March 15, 1917; November 1, 1920.   Each note, however, contained the following proviso:

"All interest and principal not paid when due shall draw interest at 8 per cent per annum, semiannually, and a failure to pay interest when due or in case of my removal or attempt to remove from the county in which I now reside shall cause this note to become due at the option of the holder thereof."

The petition averred that the defendant had removed

out of Kossuth County, the same being the county of his residence at the time of the execution of the notes. This latter allegation is specially traversed in the answer. The order appealed from was entered in the district court in September, 1914; and the defendant's answer and his motion to set down the equitable issues to be first tried were each filed on September 15, 1914.

Division II of defendant's answer was as follows:

## "Division II.

"For cross petition and cause of action in equity against the plaintiff herein, the defendant shows to the court:

"Par. 1. That on or about the 25th day of November, A. D. 1913, this defendant signed his name to certain promissory notes amounting in the aggregate to $10,000, being the same promissory notes purported copies of which are attached to the petition herein, and upon which the plaintiff is seeking to recover in this action.

"Par. 2. That on or about the 25th day of November, A. D. 1913, the plaintiff entered the residence of the defendant in Bancroft, Iowa, and then and there orally accused the defendant of having committed fornication with the wife of the said plaintiff prior to her marriage to the plaintiff.

"Par. 3. That the plaintiff was then and there armed with a heavy stick or cane and the defendant was unarmed, and the plaintiff then and there menaced the defendant with said stick or cane and made demonstrations thereof over the defendant and threatened that he would maim, injure and kill the defendant.

"Par. 4. That the defendant was then and there a priest of the Catholic church and a teacher in the parochial school at Bancroft, and as such priest had charge of the Catholic church at Bancroft, Iowa, and parochial school connected therewith; and the defendant [plaintiff] further threatened at said time and place to expose the defendant's alleged criminal relations with the plaintiff's wife and to bring about a

great scandal and to ruin this defendant in his reputation and his standing as a priest and teacher.

"Par. 5. That thereupon the plaintiff did demand of the defendant money and did further demand of the defendant that if he could not pay any money that he execute to the plaintiff his promissory notes aggregating $10,000, and the plaintiff threatened the defendant that unless the defendant complied with his said demands for money or promissory notes, he would maim, injure and kill the defendant as aforesaid and further threatened that he would make the exposure and create the scandal as aforesaid, but orally promised the defendant that, if the defendant would comply with said demands, the plaintiff would keep the same a secret and would not bring about or publish the said scandal or the plaintiff's said claims, and did orally promise that upon such compliance no one would be informed of the plaintiff's said accusations.

"Par. 6. That the defendant was in a highly nervous and excited condition and by reason of said threats his will was overcome and the defendant was by the means aforesaid put in duress by the plaintiff and while under such duress, he did sign his name to the said promissory notes, which were thereupon taken by the plaintiff, and the defendant says that the defendant was placed under restraint and duress and his will was overcome and said promissory notes were through such constraint and duress secured by the plaintiff.

"Par. 7. And the defendant further says that the plaintiff, soon after procuring said promissory notes, did publish his said alleged charges to various people in Bancroft and vicinity and did create a public scandal and did bring disgrace upon this defendant and upon the said church and school.

"Par. 8. And the defendant further says that the plaintiff's said accusations were false and untrue and were known by the plaintiff at the time to be false and untrue. This defendant says that he had not committed fornication with the plaintiff's said wife and had not had immoral or illegal

relations with her of any kind, and that the plaintiff falsely and maliciously made said charges, threats and promises for the fraudulent and malicious purpose of extorting money or the said promissory notes from this defendant.

"Par. 9. That the defendant has received no value or consideration of any kind for or on account of the said promissory notes or either of them and the same are wholly without consideration.

"Par. 10. That the plaintiff is insolvent and the said promissory notes at the time of the commencement of this action were not due and were not by their terms due, and that only one of them is now by its terms due, and the same are negotiable and are in the possession of the plaintiff and that the plaintiff intends and purposes by any means within his power to harass and annoy the defendant and to continue to bring and keep him in public scandal and disgrace and to worry him into making payment or settlement, or failing in that that the plaintiff will, as the defendant believes and charges the fact to be, negotiate the said promissory notes to third persons in order that they may hold the same as apparent bona fide purchasers and continue to annoy and harass the defendant therewith.

"Par. 11. That this action is unfounded and the plaintiff will by himself and through others bring other unfounded actions in the premises unless he is restrained by the court therefrom, and the plaintiff will continue to agitate and orally publish the said scandal and will orally defame and slander the defendant therewith and bring him into public disgrace and will scandalize and will continue to scandalize the Catholic church and the said school and community for the purpose of extorting money from this defendant unless he is restrained by the court, knowing that he is insolvent, and that the defendant has no recourse at law.

"Par. 12. That the plaintiff [defendant] has no adequate remedy at law in the premises.

"Wherefore, defendant prays judgment dismissing the plaintiff's petition at plaintiff's costs, and further that a temporary injunction issue restraining the plaintiff from negotiating or parting with the possession of said promissory notes, or either of them, and restraining him from publishing the said false charges against this defendant, and from defaming and slandering the defendant by said charges and repetition thereof, and restraining him from bringing further suits and litigation in the premises either in his own name, or in the names of others, and further prays that upon final hearing herein, the said promissory notes be decreed to be surrendered into court and that the same be adjudged to be void and cancelled by the court, and that the said injunction be made permanent and that defendant have judgment for costs, and for all and such other relief as to the court may seem just and equitable."

The above defenses set forth in Division II were incorporated into Division I of the answer, by reference to Division II.

Sec. 3435, Code, 1897, is as follows:

"Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings."

1. TRIAL: method of trial: prayer as controlling transfer to equity.

It will be noted from inspection of the allegations of the answer above set forth that the only defenses pleaded as against the validity of the notes sued on are duress and want of consideration. Neither of such defenses present any issue "heretofore exclusively cognizable in equity." These defenses are without question available to the defendant as a defense at law. It is urged, however, that the defendant prayed for

equitable relief in the form of a cancellation of the notes, and that such relief could be had only in equity. But we have frequently held that the mere prayer of a cross-petition asking for a cancellation of the instrument sued on by the plaintiff will not of itself entitle the defendant to a trial of the issues on the equity side. This is squarely held in *Gray v. Coan*, 36 Iowa 296; *Biermann v. Guaranty Mutual Life Ins. Co.*, 142 Iowa 341; *Dille v. Longwell*, 169 Iowa 686.

The following discussion in the *Biermann* case is applicable to the present case:

"I. Error is assigned upon the refusal of the court to separate the issues, and try the matters, alleged in the cross-petition as in equity, before proceeding with the main action. It would hardly seem necessary to go into extended argument to demonstrate the unsoundness of this claim. The defendant had been brought into a court of law to answer to an action upon its contract. If that contract had been procured by fraud or false representations, such fact was a full, complete and perfect defense to the action, and, if that defense was made good, the policy would be deprived of all vitality as fully as could have been accomplished by a decree in equity formally canceling it. The appropriate law issue for that purpose had already been joined, and was waiting trial before the cross-bill was filed. Generally speaking, equity has no jurisdiction where there is an adequate remedy at law. 16 Cyc. 30. Of course, there is a certain field in which law and equity are said to have concurrent jurisdiction, and this jurisdiction includes a class of cases growing out of alleged accident, mistake or fraud. But even in this common field courts of equity, though recognizing the existence of their jurisdiction, are generally reluctant to exercise it where the remedy at law appears to be adequate and complete. *Gorman v. Low*, 2 Edw. Ch. (N. Y.) *324; *Robinson v. Chesseldine*, 5 Ill. 332; *Hales v. Holland*, 92 Ill. 494; *Knight v. Hardeman*, 17 Ga. 253. This court has held that equity will not enter-

tain an action to rescind a contract for mistake, unless it appears that an injury will result for which the aggrieved party will have no adequate remedy at law. *Morse v. Beale,* 68 Iowa 463. So, too, where a court of law has already obtained jurisdiction of a controversy involving an alleged fraud, equity will not interfere. *Nash v. McCathern,* 183 Mass. 345 (67 N. E. 323); *Eaton v. Trowbridge,* 38 Mich. 454; *Sweeny v. Williams,* 36 N. J. Eq. 627. To sustain the position of the appellant herein would be to sanction a practice by which the plaintiff in every action upon an insurance policy, or, indeed, upon every simple matter of contract, may be deprived of his constitutional right to have his cause submitted to a jury. The attempt so to do is by no means without precedent in this state. In the early case of *Smith v. Short,* 11 Iowa 523, Short brought an action at law to recover the price of certain land sold by him to Smith. The latter then sued out an injunction to enjoin the proceeding at law on the ground that the contract had been procured by fraud, and that Short had no title to the land he pretended to sell. In holding that the injunction was improperly issued, this court said: 'For aught that is shown, every matter stated in the bill can be made as fully available in answer and defense to the action at law as by an appeal to equity. Under such circumstances, the parties should be left to their legal remedies and defenses.' Practically the same question was raised in *Smith v. Griswold,* 95 Iowa 684. There an action at law was brought upon a due bill and upon cross-petition to reform the instrument a motion to transfer the issue to equity for trial to the court was overruled. Affirming this ruling, the opinion says: 'The sufficiency of the facts pleaded as a defense was not questioned, and, if they were established, the law forum gave the same relief as was sought in equity. The facts which would reform the instrument would defeat a recovery on it. Under such circumstances, equity has no jurisdiction. This is elementary.' Further discussion of this

branch of the case is unnecessary. The court did not err in overruling the defendant's motion. Indeed, it might well have sustained the plaintiff's motion to strike the cross-bill as it is a mere repetition of matters already pleaded in defense, and, as we have seen, the prayer for equitable relief was of no avail to defeat or interfere with the trial of the issues already joined.''

In the *Dille* case, we said:

''This plea is defensive, and does not present an equitable issue in the case, and if proven, may be effectively used in resistance to the action at law upon the written instrument. It is a general rule that a defense asking cancellation may not be made in a pending suit at law upon a written instrument, where the determination of the issue in the law case will definitely settle the rights of the parties. 6 Cyc. 292; 1 Pomeroy, Eq., Sec. 179.''

In *Smith v. Griswold*, 95 Iowa 686, we said:

''Had the agreement been reformed, the legal effect would have been no more than the legal effect of the facts pleaded in the law action. The sufficiency of the facts pleaded as a defense was not questioned, and, if they were established, the law forum gave the same relief as was sought in equity. The facts that would reform the instrument would defeat a recovery on it. Under such circumstances, equity has no jurisdiction. This is elementary.''

It is urged, however, that the case at bar is differentiated from the cited cases in two respects: (1) That the notes did not appear upon their face to be due, and the defendant denied the facts alleged by plaintiff as causing their maturity; and (2) that the notes were negotiable in form, and that, if the present action were dismissed by plaintiff, or were abated as a result of trial, the plaintiff could transfer the notes to innocent third parties and thus annoy and harass the defendant.

The argument is that it was appropriate to set the equi-

table issues to be first tried because every issue would be thereby tried, whereas a trial at law might result in a mere abatement without an adjudication of the

2. TRIAL: method of trial: remedy at law as bearing on transfer.

merits of the defense or the validity of the notes, and that the defendant would thereby. be left without any remedy to bring his defense to an issue. It is also urged that a multiplicity of suits would be thereby avoided. Many of the allegations of the defendant's answer were contradicted by the very proceedings pending before the court at the time of the ruling. No multiplicity of suits was threatened. No delay of litigation was attempted by plaintiff. He brought one action upon all of the notes and was pressing his action to trial. The case had been assigned for trial to a jury before defendant's final answer and motion to transfer were filed. The order appealed from prevented the jury trial which was about to begin. In resistance to the defendant's motion, the plaintiff brought the notes into court and placed them in the custody of the clerk and caused the record to show that they were to be left in the custody of the clerk until the final adjudication as to their validity was had. The first note had become due without question on March 1st preceding. As to that note, therefore, there could have been no abatement for want of maturity. True, the action was begun before March 1st. Such fact might subject the plaintiff to costs, but it would not abate his action. *Gribben v. Clement*, 141 Iowa 144. As to such note, therefore, a complete adjudication as to its validity could be had upon a jury trial. It appears from the defendant's cross-petition that all the notes were given at the same time and as a part of the same transaction, and were all subject to the same defense, if any. An adjudication, therefore, as to the validity of the defense as to one note would operate as an adjudication of such defense as to every note. *Watson v. Richardson*, 110 Iowa 698; *Reynolds v. Lyon County*, 121 Iowa 733; *Aultman v. Mount*, 62 Iowa 674; *Whit-*

*aker v. Johnson County,* 12 Iowa 595. A trial at law, there-
fore, would furnish to the defendant a plain, speedy and ade-
quate opportunity to attack the validity of the notes.

It is urged, however, that, if the action should be abated
as to any of the notes for want of maturity, the plaintiff could
transfer the notes to third parties and thereby avoid the
adjudication. This argument is predicated
upon the theory that the notes are negotiable.
Whether they are negotiable upon their face
is a question into which we will not now
enter. Such negotiability will be assumed for
the purpose of our present consideration. We are brought,
therefore, up against the one pivotal question whether a
defendant may prevent a jury trial in a law action by pray-
ing for equitable relief in a cross-petition where no issue is
presented which was "heretofore exclusively cognizable in
equity," and where every issue presented is available to the
defendant as a defense at law. The cases which we have
already cited hold to the negative. In support of the affirma-
tive, however, the appellee cites and relies upon *Weseman v.
Graham,* 157 Iowa 430. In that case, the plaintiff sued for a
penalty for liquidated damages under a contract. The con-
tract was one for the exchange of lands. The defendant filed
a cross-bill, asking to set aside the contract on the ground of
fraud and for other reasons. These defenses could have been
used as a defense at law against the action for a penalty.
But the defeat of the penalty might have been had without
necessarily vitiating the contract itself. That might ·still
have remained valid and specifically enforceable. The issue
made by the cross-petition therein involved the removal of
a cloud in title to real estate, and in that sense was, therefore,
an issue "heretofore exclusively cognizable in equity." It
must be conceded, however, that our discussion in that case
and the reasons given in the opinion for sustaining the trial
court do give support to the present contention of the appellee.

3. TRIAL: method
of trial: issues
cognizable only
in equity: de-
nial of jury
trial.

In that respect, the case is somewhat out of line with both our previous and our subsequent cases. Whether the result reached could be justified on grounds consistent with our other cases is not wholly clear. Our discussion therein would indicate that we did not intend to go further than the previous cases cited therein. The cited case of *Twogood v. Allee,* 125 Iowa 59, was a case where the plaintiff himself had brought two actions simultaneously, one at law and one in equity. Both involved the same subject-matter and alleged substantially the same facts. In each case, the plaintiff asked for an accounting from the defendant, and asked that a certain note and mortgage held by the defendant should be deemed paid and discharged, and that the defendant be ordered to surrender the same, and that they be canceled. The defendant filed a cross-bill, setting up the note and mortgage referred to, and asking a foreclosure thereof. Upon motion of the defendant, the two actions were consolidated and were ordered to be tried on the equity side.

In *Johnston & Son v. Robuck,* 104 Iowa 523, the plaintiff brought an action at law for alleged conversion. The defendant was a mortgagee under a second mortgage, who had taken possession of the mortgaged property thereunder and had reduced the property in part to money. A mortgagee holding a third mortgage intervened, asking, in effect, a foreclosure of his mortgage and that the surplus proceeds, if any, in the hands of the defendant, be applied upon such mortgage. We held in that case that the plaintiff's petition at law failed to state any cause of action, and that the issues made by the pleadings of the defendant and intervener were equitable and triable as such.

In the case of *Carey v. Gunnison,* 65 Iowa 702, the action of the trial court in refusing to set the issues for trial in equity was sustained. The discussion, however, contains language which is favorable to appellee's present contention. The motion to transfer to equity was by the plaintiff, not by

the defendant. The right of plaintiff, therefore, to demand a jury was not considered. The foregoing are the cases cited in the *Weseman* case, supra.

In the case before us, we think it must be held that none of the issues presented in the cross-petition were necessarily triable in equity; that the mere prayer for the cancellation of the notes sued on is not enough to justify the trial of the issues on the equity side; that, even though the prayer for such cancellation might have been permitted to stand as a protection to the defendant against future dismissal by the plaintiff, the issues at law as made should have been set first for trial at law. We so expressly held in *Morris v. Merritt*, 52 Iowa 496; *Gibson v. Seney*, 138 Iowa 383, 386; *Eller v. Newell*, 159 Iowa 711. No question of reformation was involved. To hold otherwise would put an end to jury trials upon written instruments except by the consent of the defendant.

The order of the trial court setting the case to be first tried upon the equitable issues is therefore reversed.— *Reversed* and *Remanded*.

LADD, WEAVER, GAYNOR, PRESTON and SALINGER, JJ., concur.

DEEMER, J., dissents.

DEEMER, J. (dissenting).—The notes in suit were ordinary promissory ones, and were not secured, in any way. If they are nonnegotiable, it is because of this provision:

"And a failure to pay interest when due or in case of my removal or attempt to remove from the county in which I now reside shall cause this note to become due at the option of the holder thereof."

The action was commenced before any of the notes had reached maturity, unless it be for the provision which I have quoted; so that the first question is: Were these notes rendered nonnegotiable by the insertion therein of this provision?

Upon that proposition there can be no doubt, in view of our recent pronouncement upon the subject in the *Des Moines Savings Bank v. Arthur*, 163 Iowa 205, 215, that the notes are negotiable.

"Under the Negotiable Instruments Act, an instrument to be negotiable 'must be payable on demand, or at a fixed or determinable future time.' Section 3060-1a, Code Supp. This note was payable 'on the 6th day of October, 1910.' It was certain that the time would arrive when the note would be payable, and the circumstances that it might become payable before that time upon the default of the maker in certain respects at the option of the payee or holder did not affect its negotiability. *Charlton v. Reed*, 61 Iowa 166; *Chicago, etc., Equipment Co. v. Merchants' Nat. Bank*, 136 U. S. 268 (10 Sup. Ct. Rep. 999; 34 L. Ed. 352); *Hunter v. Clarke*, 184 Ill. 158 (56 N. E. 297; 75 Am. St. Rep. 160); *Mackintosh v. Gibbs*, 81 N. J. L. 577 (80 Atl. 554; Ann. Cas. 1912 D, 163); *Merrill v. Hurley*, 6 S. D. 592 (62 N. W. 958; 55 Am. St. Rep. 859); *Taylor v. American Nat. Bank*, 63 Fla. 631 (57. So. 678); *Barker v. Sartori*, 66 Wash. 260 (119 Pac. 611). See valuable note to *Holliday State Bank v. Hoffman* (Kans.), Ann. Cas. 1912 D, 1."

In view of these recent decisions, there remains no question as to the negotiability of the instruments, and that none of them were due when this action was commenced. However, plaintiff had the right to commence his suit, and to allege that they had become due because of the fact, which was stated in the petition, that the defendant had removed from Kossuth County. The defendant admitted the execution of the notes, but specifically denied that he had removed from the county of Kossuth, and averred that they were without consideration. This clearly tendered law issues, which were complete in themselves, and amounted to a plea in abatement only. Were he successful on these legal issues, the question as to the validity of the notes would still remain; and, upon plaintiff's

defeat, on the issue that the notes, or any of them, had not matured, he might take such notes, and dispose of them at will, and any good-faith purchaser would be able to enforce them against the defendant. In that situation, defendant chose to interpose a cross-petition in equity, pure and simple. In this, he alleged, in substance, that the notes were obtained from him through fraud and duress; that they were without consideration of any kind; that plaintiff is insolvent, and that he was then in possession of the notes; that he intended to harass and annoy the defendant and worry him into making payment or settlement, or, failing in that, he would, as defendant believes and charges the fact to be, negotiate the said notes to third persons, in order that they might hold the same as bona fide purchasers, and continue to annoy and harass the defendant. He asked that plaintiff be restrained by the court from negotiating or disposing of the same, or from annoying and harassing defendant therewith; restrained from uttering false charges against the defendant, with relation to how the notes came to be given; restrained from bringing further suits upon the notes; and prayed that the said notes be decreed on final hearing to be void, and that the plaintiff be required to surrender them into court for cancellation, and for other equitable relief. Coincident with the filing of this pleading, defendant moved to have the issues raised by the cross-petition, transferred to the equity docket for trial. This motion was sustained, and the sole question, as I understand it, is whether or not this order should be sustained. It is manifest, I think, that the only law issue tendered by this pleading was the question as to whether or not defendant had removed from the county of Kossuth. If he had not, plaintiff's action was abated, and, under that issue, the validity of the notes could not and would not be investigated. The defendant tendered no other legal issue. In order, however, to protect himself from harassment, annoyance, multiplicity of suits, and an attempt on the part of plaintiff to negotiate the notes, defendant, by his cross-

petition in equity, asked that the plaintiff be enjoined from negotiating them; asked that they be surrendered, held void, and canceled. That he had the right to do this by cross-petition in equity, cannot be doubted. He, doubtless, might, at his election, have pleaded some of these matters, but not all, as a defense to the action at law; but he saw fit to do nothing but enter a plea of abatement in that suit. The question is not whether defendant might have pleaded some of the same matters in defense to the law suit, but whether he, in fact, did do so. My reading of his pleading leaves no doubt that the only law issue that he tendered was whether or not the notes had matured, by reason of his removal from Kossuth County; and a trial of that issue would not determine whether or not the notes were of any validity. If he did not see fit to plead an equitable defense to the note, the question arises whether he, in a law suit, may interpose an equitable cross-petition. Upon that question, there is no doubt in the authorities. That he pleaded facts which would justify a court of equity in giving him the relief demanded, is unquestioned. And, to determine whether or not one is entitled to equitable relief, or as to whether his action is at law or in equity, we must look at the facts pleaded, but, more particularly, to the relief demanded. If one have a cause of action for fraud, duress or mistake, upon which he might bottom a law suit, or which he might, at his option, plead in defense to a law suit, or make the basis of a cross-petition in equity, the only method whereby to determine which remedy he has adopted, is to look at the facts pleaded, and then to the relief prayed in the pleading itself. If the facts pleaded justify equitable relief, and he asked such relief, his cause of action certainly must be in equity. In other words, the facts pleaded in this cross-petition are to be viewed in the same manner, as to substance, as if the same facts had been made the basis of a petition in chancery. Generally speaking, an injunction against another, a decree requiring him to surrender property, or requiring the cancellation or reformation

of an instrument, can be heard only in equity. *Penny v. Cook*, 19 Iowa 538. So that, if defendant had not been sued at all, he would have had the right to commence an action against the plaintiff; and, had he alleged the facts which he set out in his cross-petition in this case, and proved them, he would undoubtedly have been entitled to the relief prayed, and this relief would have been by a chancellor. It should be conceded then, I think, that defendant interposed a perfectly valid cross-petition in equity against the plaintiff, and that he did not plead any of the facts therein recited, as a defense to plaintiff's case at law. As already intimated, his defense to plaintiff's suit at law was nothing but a plea in abatement. So long as it rested with the defendant to frame his own issues, it is not for the court to say that he interposed other defenses to the law action. He sought, however, in that law action, by a perfectly proper cross-petition, to have that relief prayed for therein which could be only granted by a court of equity. The question then arises, his pleading being proper: Was he entitled to have the issues tendered by his cross-petition transferred to the equity docket for trial? Upon this proposition, there should be no doubt; for the Code expressly provides:

"Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings." Section 3435, Code, 1897.

There remains, then, but a single inquiry: Having an equitable cross-petition in equity, and a law action to which the defense is a plea in abatement, both on the docket at the same time, which one should be first tried? According to the early decision on this subject, the equitable one should

first be tried. In *Kramer v. Conger,* 16 Iowa 434, which was an action to recover real property, this court said:

"Where, as in this case, an equitable defense is set up, that issue should be tried as in equitable proceedings, by the first or second method, according to its class, and if the equitable defense is found insufficient, the legal issues, if any remain, should be tried by a jury, unless a jury is waived. If the equitable defense is found sufficient, the court may, in a proper case made, grant complete relief."

Again, in *Van Orman v. Spafford,* 16 Iowa 186, 190, the court said:

"There being no legal issues presented by the amended answer, the appropriate practice would be to try first the equitable issues thus made. If these are, in a case like the present, found for the defendant, this disposes of the case at law. If these are found against the defendant, then if there are legal issues, they are next to be disposed of in the manner provided for the disposition of law issues. If there are no such legal issues, and if the equitable issues are found against the defendant, judgment is entered for the plaintiff on his petition at law."

This was said in a law action to recover possession of property. There, as here, a cross-bill in equity was filed, and a request made that it be transferred to the equity docket, and the equitable issues heard. Again, in *Hackett v. High,* 28 Iowa 539, the court said:

"If, therefore, the issues presented in this case were equitable, it would seem that all controversy would be closed. And that the issues arising on the answer are strictly equitable, and to be tried as in cases 'heretofore exclusively cognizable in equity,' we feel quite clear. Plaintiff could not, without settlement with his partner, before the adjustment of their partnership affairs, and before dissolution, by suing him at law, deprive him of the right of having a settlement and adjustment in an equitable tribunal. Indeed, a well rec-

ognized part of the equity jurisdiction is the settlement of just such controversies.''

In *Morris v. Merritt,* 52 Iowa 496, 501, speaking to this point, the court said:

''The question now arises as to the manner of trying the issue presented by this equitable answer, and the other issues in the case arising upon plaintiff's petition. Code Section 2517 provides as follows: 'Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such as were heretofore cognizable in equity, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings.' This section provides that issues exclusively cognizable in equity shall be tried as equitable proceedings, i. e., by the court without a jury. Other issues not cognizable in equity are to be tried as issues at law, i. e., by a jury. This is the obvious meaning of the section. In actions at law, therefore, when equitable issues are presented they are triable as in chancery; pure issues at law which are not cognizable in equity are to be tried to a jury. Such is the interpretation which this court has given the section. *Van Orman v. Spafford, Clarke & Co.,* 16 Iowa 186; *Byers v. Rodabaugh,* 17 Iowa 53; *Hackett v. High,* 28 Iowa 539; *Kramer v. Conger,* 16 Iowa 434. In some of these cases it is said that the equitable issues should be first tried. This course we presume should be pursued when the trial of the equitable issue in a certain event would dispose of the case. But if the trial of the law issue would, in the event of a verdict for one of the parties, render a trial of the equitable issue unnecessary, in that case the issue at law should be first tried. The issue, either equitable or at law, should be first tried which may result in rendering a further trial unnecessary. This rule is supported by reasons based upon the economical and speedy

administration of justice. If a single trial will dispose of a case, the law will not permit another. If the disposition of one issue may finally settle the rights of the parties it should be first tried, to the end that further proceedings may be dispensed with."

In *Twogood v. Allee*, 125 Iowa 59, 61, the court said:

"The parties were the same, the issues practically identical, and a court of equity could alone grant complete relief. The equitable issues were such as to dispose of the entire controversy. Had the law issues been first tried, the result would not have been conclusive of all the equitable issues tendered. But equity could dispose of the entire matter. In such cases the equity suit should first be tried. That the cases were properly consolidated, goes without saying. After this consolidation, there were many matters which could not be submitted to a jury, and we think the trial court was right in denying a jury trial. See, as sustaining our conclusion, *Morris v. Merritt*, 52 Iowa 496; *Gatch v. Garretson*, 100 Iowa 252; *Wilkinson v. Pritchard*, 93 Iowa 308; *Marquis v. Illsey*, 99 Iowa 135. The cases relied upon by appellant are not in point. His argument is based upon the thought that, if the issues are of fact, the case is necessarily for a jury. But this is not true. Issues of fact may arise in an equity suit. Generally speaking, it is the nature of the relief sought which determines the character of an action. *Kelly v. Andrews*, 94 Iowa 486. Cancellation of a written instrument can only be granted by a court of equity. Moreover, after the consolidation of the two cases, which was manifestly proper, the entire case could be disposed of by a chancellor. Had the case been submitted to a jury upon issues of fact which it could properly consider, there would yet have remained equitable issues to be disposed of. Under such circumstances it was proper to try the entire case as in equity. See, as further sustaining our conclusions, *Palmer v. Palmer*, 90 Iowa 17."

In *Johnston & Son v. Robuck*, 104 Iowa 523, we said:
"It may be conceded that, unless the petition failed to

state a cause of action, the court erred in ordering the issues at law to be tried in equity. Under Section 3435 of the Code, on motion, issues cognizable in equity may be transferred to the equity side, but not the issues at law, and no motion is required to have these tried separately in the proper forum. It is said in *Byers v. Rodabaugh*, 17 Iowa 53, 'that the right to have an action transferred from one docket to another arises only where the plaintiff has brought his action by the wrong proceedings; that is, where he has brought his action by ordinary, when he should have adopted equitable, proceedings, and *e converso.'* *Morris v. Merritt*, 52 Iowa 496, is in point. Referring to this section, Beck, J., says (supra): . . . Where the issues are mixed, the procedure seems to be somewhat controlled by statute. For this reason, defenses at law to an equitable action must be determined by the chancellor. *Ryman v. Lynch*, 76 Iowa 587; *Frost v. Clark*, 82 Iowa 298; *Wilkinson v. Pritchard*, 93 Iowa 308; *Leach v. Kundson*, 97 Iowa 643; *Gatch v. Garretson*, 100 Iowa 252; *Evans v. McConnell*, 99 Iowa 326. Going to trial does not waive the error of the court in changing the form of action. *Rabb v. Albright*, 93 Iowa 50. Undoubtedly, the ordinary rule is to hear the equitable issues first. But, where a trial at law will practically settle all matters in controversy, it ought to be first had. *Morris v. Merritt*, supra.''

In *Thatcher v. Stickney Bros.*, 88 Iowa 454, 456, we said:

''The assignment leads us to consider the state of the pleadings in the case. The original petition is in paragraphs numbered from 'first' to 'sixth.' It contains but a single count, and is for damages because of the failure to pay the assessments, resulting in a refusal by the corporation to make the transfer on the books. The answer, because of its admissions, makes the issue one upon its allegations for affirmative relief in the reformation of the contract, and the denial by the plaintiff. With the issue thus presented, if the contract should be reformed, it would show that the plaintiff should pay the assessments, and he would have no cause of action.

If not so reformed the admissions by the defendant would show its liability, and the result would be determined in either case without further proceedings. The issue as to reformation is purely an equitable one. *Carey v. Gunnison,* 65 Iowa 702. With this condition of the pleadings there could be no issue for a jury.''

. Whatever of confusion there may be in the cases in general, our latest pronouncement upon the subject is found in *Weseman v. Graham,* 157 Iowa 430. There, plaintiff brought an ordinary law action upon a contract to recover damages. The defendant admitted signing the writing, but alleged that it never became a contract, and filed a cross-petition, in which he asked the cancellation of the contract, and he then moved to transfer the case for trial on his cross-petition to the equity side of the docket. This motion was sustained, and, upon appeal, we said:

''We are of the opinion that the court properly sustained the motion to transfer. It is, of course, true that the question whether there had, in fact, been a contract and the question of fraud in its procurement, if there was a contract, could both be determined in a law action. But the plaintiff might have dismissed before trial, in which event the defendant, in the absence of a cross-petition praying a cancellation of the contract, might still be subject to another action on an apparently valid contract. We have held that the cancellation of a contract can only be procured in equity, and under the rule so announced the issue here was properly tried. *Twogood v. Allee,* 125 Iowa 59; *Carey v. Gunnison et al.,* 65 Iowa 702; *Johnston & Sons v. Robuck,* 104 Iowa 523.''

Neither *Carey v. Gunnison,* 65 Iowa 702, nor *Richards v. Monroe,* 85 Iowa 359, is in point. In each, the action was at law, and the defendant pleaded equitable defenses only; there was no cross-petition in either case, and no prayer for any equitable relief. The cases are authority for my position, because, in each, the decision was made to turn upon the proposition that in neither was there any prayer for reforma-

tion, or any other equitable relief. It matters not that, in each of the cases, plaintiff moved to transfer, because the statute already quoted gave either party the right to file such a motion; so that the distinction which the majority attempt to draw, because of the fact that it was plaintiff who moved to transfer, rather than the defendant, is of no moment.

I agree that certain facts may be pleaded, as an equitable defense to an action at law, or the pleader may plead them, not as a defense, but as ground for equitable relief, by way of cross-petition, and he may, doubtless, do both, in certain cases; but it is very clear to my mind that, if his pleading is simply by cross-petition, in which he asks proper equitable relief, there can be no doubt, under our statute, that he is entitled to have the equitable issues presented, transferred to the equity docket, and those issues tried in chancery; and, if they will dispose of the whole case, or, for any other reason, it is apparent that they should first be tried, he is also entitled to that relief. The right to plead in equity, or the right to have his case tried in that forum, I think, cannot be made to depend upon whether he or his adversary gets to the courthouse first. It will be conceded, I think, that, had the defendant commenced his suit against the plaintiff, alleging the facts recited in his cross-petition, and making the prayer therein contained, he would have been entitled to have that case tried in equity. If this be conceded, as I think it must be, then the right cannot be taken away from him, simply because his adversary, hearing, perhaps, of what was likely to happen, rushed off to the clerk's office, and got a petition at law on file, and a notice served, before the defendant commenced his action in equity. The majority, conceding the first of these arguments, nevertheless contend that the matter is ruled by *Biermann v. Guaranty Mut. L. Ins. Co.,* 142 Iowa 341, and some other cases.

I have already demonstrated, I think, that the notes were negotiable. It is perfectly apparent that the plaintiff might,

at any time, dismiss his action upon the notes, negotiate those which had not matured by their terms, either at the time this action was brought, or now, dispose of them to innocent holders, or perplex the defendant with successive suits upon the notes; and, if he (plaintiff) is insolvent, harass the defendant with impunity, by commencing suits on each note, and as many as he might see fit to bring, until final judgment and decree. It should not be overlooked that, on the law side, plaintiff might have been defeated by the plea of abatement alone; and that, if so defeated, he could withdraw his notes which had not then matured, according to their terms, dispose of them to an innocent holder; and this innocent holder might recover the full amount thereof from the defendant, the defendant in such case being wholly without recourse upon the plaintiff, because he (plaintiff), if for no other reason, was and is insolvent. The doctrine of *lis pendens* does not apply to personal property, especially to negotiable notes. A judgment on the note which fortuitously matured during the pendency of the suit, even in defendant's favor, would not be notice to or binding upon a good-faith purchaser of the notes which had not yet matured, according to their terms. It is this which distinguishes the *Biermann* case from the one at bar. That was an action upon an insurance policy. The loss having occurred, the policy was not negotiable; and, while the plaintiff there might have dismissed his case, there was no showing that he was insolvent, was likely to bring separate suits, that the insurance policy had not fully matured, or that it was negotiable. *Smith v. Short,* 11 Iowa 523, is in no manner in point: that was an action to recover the purchase price of land, an action at law. The defendant, by an independent action in equity, sued to enjoin the proceeding at law, on the ground that the contract had been procured through fraud. Manifestly, such a case is not authority for anything involved in this proceeding. In *Smith v. Griswold,* 95 Iowa 684, the facts were pleaded defensively, under the

statute allowing both legal and equitable defenses; and it did not appear that the action was on a negotiable instrument, nor were any equitable matters pleaded which were not a defense to the lawsuit. No other issue was made, as in this case. Here, as already indicated, there was a plea in abatement. I think that we are clearly up against the proposition of following or overruling the *Weseman* case, supra; and, as it is the latest expression of this court upon the subject, I, for one, do not favor overruling it, especially in this case, which introduces elements making it much stronger than that one. I do not regard the mere circumstance that the plaintiff, after the motion had been filed, and while the motion was being argued, brought the notes into court, and placed them in the custody of the clerk, and caused an entry to be made, of some sort, that they were to be left in the custody of the clerk until the final adjudication as to their validity was had, in any way changes the rule as to the forum in which the matter should be adjudicated. By his cross-petition, the defendant had already fastened the jurisdiction of the court upon these notes, and plaintiff could not, by bringing them into court and depositing them, deprive the defendant of his right to have his action in equity properly tried and disposed of. Surely, the discussion in the opinion as to the effect of an adjudication upon one of the notes in suit, is beside the case; for I do not believe that the majority wish to affirm that such an adjudication is, in any way, binding upon the holder of a note taken before maturity, from one who had been a party to some litigation upon one of a series of notes which had matured before the holder made to another his transfer or sale of the notes not matured. In so far as defendant's cause of action is concerned, the issues he presented, of cancellation and his prayer to enjoin the plaintiff from disposing of the notes, and from bringing actions thereon to harass the defendant, were exclusively cognizable in a court of equity, and these issues could not be tried in a law action. In determining whether or not the issues presented were heretofore

exclusively cognizable in equity, we must look to see what the relief prayed for in the petition reciting the facts really is.

On the whole record, I think the order made by the district court was correct, and that it should be affirmed.