[No. 19609.  Department Two.  April 8, 1926.]

BANK OF CALIFORNIA, *Respondent*, v. NATIONAL CITY COMPANY, *Appellant*.[1]

[1] BILLS AND NOTES (36)—NEGOTIABILITY—CONDITIONS IN INSTRUMENTS—CONSTRUCTION. Corporate bonds, payable to bearer, issued with the manifest intent that they be placed on the market and transferred by delivery, are to be construed with all possible liberality as to being negotiable, so far as transfer of title is concerned, rather than strictly on behalf of the maker, as in the case of defenses against them.

[2] SAME (36). The negotiability of corporate bonds, payable to bearer, issued with the manifest intent that they be placed on the market and transferred by delivery, is not affected by a provision that the maker may deduct from the interest any amount for any income tax, not in excess of two per cent of such interest.

[3] SAME (36). The negotiability of such bonds is not affected by a reference to the mortgage for the provisions securing the bonds, .where it does not limit or expand any rights or obligations of the holders, except as to the security.

[4] SAME (36). The negotiability of such bonds is not affected by a provision authorizing the acceleration of maturity, in case of specified defaults in the mortgage, when the acceleration evidently related to the enforcement of the security and not to the maturity of the bonds.

[5] SAME (36). The negotiability of such bonds is not affected by a provision making them redeemable at the option of the maker, upon published notice, at accrued interest plus a premium, where its effect is simply to make them payable "on or before" the date of maturity.

Appeal from a judgment of the superior court for King county, Lindsley, J., entered April 27, 1925, upon findings in favor of the plaintiff, in an action for the recovery of stolen bonds transferred to defendant, tried to the court. Reversed.

[1] Reported in 244 Pac. 690.

*Bullitt & Kahin,* for appellant.

*Kerr, McCord & Ivey,* for respondent.

*Hugh M. Caldwell, amicus curiae.*

PARKER, J.—The plaintiff bank commenced this action in the superior court for King county, seeking recovery from the defendant company of twelve. interest bearing bonds of the face value of $500 each, issued by the Pacific Gas & Electric Company of California; or, in the alternative, the value of the bonds, if delivery thereof cannot be had. A trial upon the merits without a jury resulted in findings and judgment awarding to the plaintiff recovery of the value of the bonds, their delivery not being possible because of the defendant's disposition of them. From this judgment the defendant has appealed to this court.

Our real problem is, as to whether or not the bonds in question are negotiable, in the sense of possessing that quality to the extent that good title to them may pass by delivery to an innocent purchaser in good faith for value, though they may have been stolen from some former owner and the claim of title to them by appellant be rested, through mesne transfers, upon a former transfer by the ones who stole them.

The controlling facts are not in dispute, and may be summarized as follows: The Pacific Gas & Electric Company, on December 1, 1922, issued a large number of its bonds for the principal sum of $500 each, maturing December 1, 1952, aggregating a very large sum. The bonds here in question are numbered 2727 to 2740 inclusive of that issue. They are upon their face designated as "FIRST AND REFUNDING MORTGAGE GOLD BONDS," printed in outstanding capital letters. They are made payable to "BEARER," that word being also printed in outstanding capital letters, unaccompanied by any word or words suggesting in the slightest

degree the necessity of indorsement by an owner for purpose of transfer. They are somewhat elaborately engraved. When casually viewed, they at once strongly suggest that they are negotiable securities, issued with a view that they are to go out into the market and their title pass by mere delivery from hand to hand as such securities. On November 7, 1923, respondent had become the owner and holder of the twelve bonds in question. On that day, the bonds were forcibly stolen from the possession of the respondent's agent by armed bandits on the streets of Seattle. Three months later, on February 13, 1924, appellant purchased the bonds in the open market from a well-known and highly respected bond house of Seattle, paying therefor their market value, at which time appellant had no knowledge or reason to believe that the bonds had been stolen, and no notice of any defect or infirmity in the title thereto in the bond house from which the bonds were so purchased, or in any prior holder. Soon thereafter respondent learned of the bonds having passed into the possession and claim of ownership of the appellant. This action followed, with the result we have already noticed.

[1] Since appellant purchased the bonds in good faith, for value, before maturity, it thereby became the holder of them in due course; and, if the bonds are negotiable, in the sense in which that quality has to do with the transfer of title, then appellant acquired good title to the bonds, though respondent lost possession of them by theft. This proposition, as we understand counsel for respondent, is conceded by them. Indeed, this has become the settled law of this state, as it has elsewhere in this country. *Fidelity Trust Co. v. Palmer,* 22 Wash. 473, 61 Pac. 158, 79 Am. St. 953; *Angus v. Downs,* 85 Wash. 75, 147 Pac. 630; *Marcus*

*v. Ofner,* 103 Wash. 478, 175 Pac. 31; *Woodworth v. School District No. 2,* 103 Wash. 677, 175 Pac. 321; *Manker v. American Savings Bank & T. Co.,* 131 Wash. 430, 230 Pac. 406; 3 R. C. L. 1000.

We deem it appropriate to here note that our decisions in *Fidelity Trust Co. v. Palmer, Marcus v. Ofner* and *Woodworth v. School District* plainly recognize that an instrument may be negotiable in so far as that quality has to do with transfer of title, and, at the same time, not be negotiable in so far as that quality has to do with defenses the maker may have against the obligation the instrument evidences. In the *Fidelity Trust Co.,* case it was said:

"The great weight of authority is that a county or city warrant possesses all of the qualities of negotiable paper but one, viz., that it is open to any defense which might have been made to the claim upon which it is founded. For all purposes involving its title, it must be treated as negotiable."

The law, as thus announced, is quoted with approval in both the *Marcus* and *Woodworth* cases. It was this view of the law that prompted the dissent by the writer of this opinion in *Manker v. American Savings Bank & T. Co.* That case, however, was decided by the majority upon the theory that the instruments there in question, the local improvement bonds, were clearly not unconditional promises of the city, but only promises to pay from a special local improvement fund, which it, the city, was to collect and hold in trust for the payment of the local improvement obligations. But our former decisions are still authority for the proposition that an instrument may be negotiable, in so far as that quality has to do with transfer of title, and at the same time not negotiable, in so far as that quality has to do with defenses the maker may have against the obligation which the instrument evidences. Now

it may be that the language of an instrument should be viewed somewhat critically and construed rather strictly, touching the question of the negotiability of the instrument, when there is drawn in question the maker's claimed right to set up a defense against the obligation it evidences, because such right is to be denied only when there remains no uncertainty as to the instrument being negotiable. But when there is drawn in question only the title to an instrument made payable to bearer, issued with the manifest intent that it is to go out into the market to be transferred by mere delivery, the courts, we think, should construe the language of the instrument with all possible liberality looking to its negotiability for purpose of such transfer of title. This, we think, is the attitude of mind in which we should approach our present inquiry.

[2]    The bonds contain, among other provisions, the following:

"All interest which shall accrue hereon shall be paid without deduction of any amount for any income tax, not in excess of a sum equal to two per cent of such interest, which the Pacific Company may be required or permitted to retain therefrom or to pay thereon under any present or future law of the United States of America."

It is argued, in behalf of respondent, that this language imposes upon the Pacific Company, the promisor, the added uncertain burdens, over and above the indebtedness specified in each bond, of paying possible taxes upon the interest installments, chargeable to the holder. We do not so read this provision. The promise is not to pay any possible taxes chargeable against the holder, but only to pay the interest without any deduction therefrom, "which the Pacific Company may be required or permitted to retain therefrom or to pay thereon under any present or future

law of the United States." This, we think, is not a promise to pay anything to or for the benefit of the holders of the bonds, but is simply a promise made for the purpose of removing all possibility of the Pacific Company having any right to make any deductions from the interest installments it has promised to pay. This promise, it is to be noticed, makes no reference to the mortgage, so, of course, is to be construed wholly apart therefrom in so far as negotiability of the bonds is concerned.

[3] Another provision of the bonds, after stating that they are secured by a mortgage, describing it in general terms, is as follows:

" . . . to which Mortgage reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, and the rights of the Pacific Company, the Trustees and the respective holders of the said Bonds with respect thereto."

This, it is contended, imports into the bonds all the provisions of the mortgage, a number of which, by reason of uncertain obligations thereby imposed upon the Pacific Company, the promisor, as it is claimed, renders the bonds non-negotiable. This, it seems to us, is not a reference to the mortgage other than merely as security. It does not, in the least, purport to be a reference to the mortgage with a view of defining, limiting or expanding any rights or obligations as between the Pacific Company and the holders of the bonds except as it touches rights and obligations with reference to the mortgage as security for the payment of the specified indebtedness evidenced by the bonds. The concluding words of this provision, "with respect thereto," we think, manifestly refer only to "the nature and extent of the security." In *Bright v.*

*Offield,* 81 Wash. 442, 143 Pac. 159, Judge Ellis, speaking for the court, said:

"According to what we believe to be the better rule, a mortgage securing a note, though referred to in the note but without expressly adopting its conditions, is merely ancillary to the note, and the conditions found in the mortgage alone will not change the character of the note as a negotiable instrument. The promise to pay is held to be a distinct agreement from the mortgage, and if couched in proper terms, the note is negotiable. *Thorp v. Mindeman,* 123 Wis. 149, 101 N. W. 417, 107 Am. St. 1003, 68 L. R. A. 146."

In that case the securing mortgage was referred to in the note, but the court declined to look to the terms of the mortgage as having any effect upon the negotiability of the note, though it was there held that certain burdens, in addition to paying the specified indebtedness, being put upon the maker of the note by its own express terms, did render it non-negotiable. In view of that decision holding the note non-negotiable, because of express provisions contained in the body of the note, it may seem that the announcement of the law as above quoted from that decision was not there necessary to be stated. We think, however, that is a sound view of the law. In the Wisconsin case of *Thorp v. Mindeman,* cited in support of the above quoted language from *Bright v. Offield,* the question was learnedly reviewed at length, wherein it was held that the provisions of a securing mortgage would not be considered as imported into a note containing this provision:

" 'The payment of this note is secured by a mortgage of even date herewith on real estate. If default shall be made in the payment of interest, or in case of failure to comply with any of the conditions or agreements of the mortgage collateral hereto, then the whole amount of the principal shall, at the option of

the mortgagee, or his representatives or assigns (notice of such option being hereby expressly waived), become due and payable without any notice whatever'."

This Wisconsin case was cited and quoted from at length upon this subject with approval by this court in *Barker v. Sartori,* 66 Wash. 260, 119 Pac. 611, though in that case the note did not contain any reference to the mortgage, though the two were executed simultaneously as one transaction. Our decision in *Moore & Co. v. Burling,* 93 Wash. 217, 160 Pac. 420, also contains observations indicating adherence to the law as announced in the above quotation from *Bright v. Offield.* We are of the opinion that this general reference, by the language of the bonds, to the mortgage does not have the effect of importing into the bonds any of the provisions of the mortgage as affecting the negotiability of the bonds.

[4] Another provision of the bonds is as follows:

"The principal of this Bond may be declared or become due and payable on the conditions, in the manner, and with the effect set forth in the said First and Refunding Mortgage, if certain defaults specified therein shall occur."

This seemingly accelerating maturity provision does come somewhat nearer importing into the bonds certain mortgage default consequences than does the above noticed general reference of the bonds to the mortgage; but, when we refer to the default provisions of the voluminous mortgage, we are met with somewhat involved statements therein as to the consequences of default on the part of the Pacific Company with reference to a number of obligations placed upon it looking to the preservation of the security. From these mortgage provisions, we can only certainly determine that the trustees to whom the mortgage runs for the benefit of the bond-holders shall be entitled to treat

the bonds as matured for the purpose of foreclosure of the security. We do not find, in the mortgage default provisions, the right of the trustees or the bond-holders to have the bonds regarded as matured for the purpose of recovery thereon as instruments independent of the mortgage security; and we think the language of the seemingly accelerating maturity provision of the bonds above quoted does not certainly so indicate. Therefore, we are of the opinion that there are no default obligations resting upon the Pacific Company, imported into the bonds, impairing their negotiability, as were found in the express language of the note involved in *Bright v. Offield,* 81 Wash. 442; 143 Pac. 159.

[5] Another provision of the bonds is as follows:

"This Bond is redeemable, at the option of the Pacific Company, on sixty days' prior published notice, on any first day of June or any first day of December prior to December 1, 1952, at par and accrued interest, plus a premium of five (5) per cent on the principal sum specified herein, upon the terms and conditions set forth in said First and Refunding Mortgage with respect to redemption of bonds of Series A."

It is contended, but briefly argued, that this renders the bonds non-negotiable, because of uncertainty of time of maturity. This, we think, has no other legal effect in this respect than to make the bonds mature "on or before" the fixed final date of maturity, and, therefore, does not render them non-negotiable. We are not referred to any mortgage provision calling for a different conclusion. Section 3395, Rem. Comp. Stat.; *Joergenson v. Joergenson,* 28 Wash. 477, 68 Pac. 913, 92 Am. St. 888; *Barker v. Sartori,* 66 Wash. 260, 119 Pac. 611; *Ackley School District v. Hall,* 113 U. S. 135; *Dickerman v. Northern Trust Co.,* 176 U. S. 181; *Ernst v. Steckman,* 74 Pa. St. 13, 15 Am. St. 542.

These bonds are but a few of the same issue, aggregating millions of dollars, manifestly executed and sent out into the market by the Pacific Company with the intent that they shall be negotiable, to the end that title thereto may pass by mere delivery as freely as the title to money passes by delivery. They are made payable to bearer. They are elaborately engraved. Each has upon its face in outstanding capital letters the words "GOLD BOND." Each has upon its face in its body in outstanding capital letters the word "BEARER" as a designation of the one to whom the obligation runs. They have every appearance to the casual observer of being fully negotiable, particularly as that quality has to do with the transfer of title. We think only a very strained construction of their language could possibly call for the conclusion that they are non-negotiable instruments. Viewing them in the spirit of the law merchant and our negotiable instrument statute, we think they must be regarded as negotiable, at least for the purpose of transfer of title.

The judgment of the superior court is reversed, and the cause remanded to that court with directions to dismiss the same with prejudice as against respondent bank.

TOLMAN, C. J., MAIN, and MITCHELL, JJ., concur.