W. E. TWOGOOD, Appellant, v. GEORGE A. ALLEE, Appellee,

**Actions:** CONSOLIDATION: EQUITY JURISDICTION. Where two suits
1  were pending at the same time, one at law and the other in equity, between the same parties, and based substantially upon identical transactions involving equitable issues which would dispose of the entire controversy, the cases were properly consolidated and tried as an equitable action.

**Conversion:** ACCOUNTING: EVIDENCE. In an action for the conver-
2  sion of personal property, an accounting and the cancellation of certain indebtedness, the evidence is reviewed, and it is held that there was neither a conversion of the property nor an agreement that the proceeds of the sale should be accepted by defendant in full satisfaction of plaintiff's indebtedness to him.

*Appeal from Benton District Court.*—HON. OBED CASWELL, Judge.

SATURDAY, APRIL 16, 1904.

Two actions entitled as above — one at law and the other in equity — were, on defendant's motion, consolidated in the district court, and tried in equity as one; resulting in a decree dismissing plaintiff's petitions, and judgment against him on defendant's counterclaims. Plaintiff appeals.— *Affirmed.*

*C. W. E. Snyder,* for appellant.

*Thomas H. Milner,* for appellee.

Deemer, C. J.—The first action brought by plaintiff was at law to recover for money had and received, for work and labor performed, and the value of property converted; to adjust an account between the parties, and to recover overpayments made by plaintiff thereon through the delivery of property and evidences of indebtedness; to recover specific property in the form of notes and mortgages; to recover a penalty because of defendant's failure to release certain mortgages held by him; and for some other items not necessary to be enumerated at this time. The prayer was for a money judgment against the defendant, for the cancellation of certain notes and mortgages, and for their possession, and for the penalties prescribed by statute for failure to release satisfied mortgages. On the same day plaintiff filed a petition in equity in which he recited many of the matters referred to in his petition at law; reiterated his statements regarding certain mortgages held by defendant; claimed that they were paid by agreement between the parties, and also by reason of the conversion of certain property belonging to plaintiff; and he asked a decree that the mortgages be declared paid, directing defendant to release the same, for a decree of cancellation, and for other equitable relief. Defendant filed a motion to consolidate the two suits, and to try the same in equity. After an answer had been filed in each case which tendered equitable issues, this motion to consolidate was sustained, and plaintiff excepted. When

the case was called for trial, plaintiff demanded a jury to try the law issues, but his demand was denied, and exception was taken to the ruling.

The pleadings are very voluminous, covering more than seventy printed pages of the abstract. It is manifest that we cannot set out even the substance thereof without unduly

1. ACTIONS: consolidation; equity jurisdiction. extending this opinion. Suffice it to say that the actions are based upon identical transactions, save, perhaps, as to three small items which were not primarily of equitable cognizance. Each suit was practically for an accounting between the parties, for the cancellation of certain mortgages held by the defendant, and for other equitable relief. In each action the defendant pleaded a counterclaim, and asked, among other things, decrees foreclosing his chattel mortgages. In the law case, plaintiff asked for a judgment declaring certain notes held by defendant to have been paid, because of the transactions had between the parties, for the possession of the notes, and for their cancellation. Such relief could only be granted by a court of equity. Moreover, the real controversy in the two suits was over certain notes and mortgages held by the defendant; the plaintiff seeking a decree and judgment declaring the same paid, and the defendant asking for judgment and decree of foreclosure thereof. The order for consolidation and the denial of a jury trial were manifestly proper. The parties were the same, the issues practically identical, and a court of equity could alone grant complete relief. The equitable issues were such as to dispose of the entire controversy. Had the law issues been first tried, the result would not have been conclusive of all the equitable issues tendered. But equity could dispose of the entire matter. In such cases the equity suit should first be tried. That the cases were properly consolidated, goes without saying. After this consolidation, there were many matters which could not be submitted to a jury, and we think the trial court was right in denying a jury trial. See, as sus-

taining our conclusions, *Morris v. Merritt*, 52 Iowa 496; *Gatch v. Garretson*, 100 Iowa 252; *Wilkinson v. Pritchard*, 93 Iowa 308; *Marquis v. Illsey*, 99 Iowa 135. The cases relied upon by appellant are not in point. His argument is based upon the thought that, if the issues are of fact, the case is necessarily for a jury. But this is not true. Issues of fact may arise in an equity suit. Generally speaking, it is the nature of the relief sought which determines the character of an action. *Kelley v. Andrews*, 94 Iowa 486. Cancellation of a written instrument can only be granted by a court of equity. Moreover, after the consolidation of the two cases, which was manifestly proper, the entire case could be disposed of by a chancellor. Had the case been submitted to a jury upon issues of fact which it could properly consider, there would yet have remained equitable issues to be disposed of. Under such circumstances it was proper to try the entire case as in equity. See, as further sustaining our conclusions, *Palmer v. Palmer*, 90 Iowa 17.

II. Defendant is a grocer doing business at Belle Plaine, Iowa. Plaintiff became indebted to him on account, which indebtedness amounted on May 15, 1899, to something

2. Conversion: accounting; evidence.

over $90. At the same time plaintiff was indebted to the Advance Thresher Company for a threshing machine he had purchased of that company, in the sum of something more than $90. This indebtedness was secured by a mortgage upon the property. On May 15, 1899, he gave a note for $200 to one T. H. Milner, due October 1, 1899, which was secured by mortgage upon the Advance separator, complete, a traction engine, wagon, water tank, and buzz saw. This note and mortgage, although taken in the name of Milner, was really for the benefit of the defendant, to cover his book account against the plaintiff, and the balance due the Advance Thresher Company. Subsequently plaintiff again became indebted to defendant in the sum of about $200, and on June 27, 1900, he executed a note for that sum to Allee, and at the same time gave him

a mortgage to secure that note upon some scrapers, plows, and live stock. This note and mortgage matured October 1, 1900. After the making of these notes and mortgages, some conversation was had between the parties with reference to the sale of the threshing machine outfit, but the parties disagree as to the terms of these conversations. Plaintiff says that he gave defendant permission to sell the machine, provided defendant got enough out of it to satisfy plaintiff's indebtedness to him, while defendant contends that he was to sell the machine and apply the proceeds upon plaintiff's indebtedness. But however this may be, it appears that defendant found a buyer for the machine, and that he wrote plaintiff the following letter under date of June 30, 1900:

"W. E. Twogood: There was a man here by the name of Guinn, from Marengo, to buy the machine, but he don't seem to have any cash. He wanted to give a mortgage on the machine, and a mortgage on one half the amount of the threshing he did. Leave all bills at the Marengo bank, and let them pay it there, what would you think of that kind of a deal. It would be for you to say. I am not posted, he looked it all over, ses it will need some repairs he said he could not find the tank and sed thare wasnt eny saw it the framewhere are they. Please advise me in regard to the above. I havent received that May yet please send me $100.00 if you posably can for I am hard up. Your, G. A. Allee."

To this plaintiff, under date of July 2, 1900, responded as follows:

"Mr. G. A. Allee I reseived your letter today if you think it all rite you do just as you wan to for I am selling it to pay you eny bargin you can make if you can sell him the machean all rite. i eill pay you for the trouble but i think he would give a mortgage on a team to but any bargin you can make so you can git your pay out of it all rite, for that is just what I want the tank and wagon you see pery Crawford he noes i aint got my check yet but i will go to mason City as soon as i can we had a strike here to day and

all the Quiglies stopped work and i am short of men now George you do the best you can with the machean all i want is to satisfy you so eny bargin you make it will sute me so it pays my note you can give him all the time he wants if it is satisfactury to you as soon as i get s some money i will send you som. Yours as ever, W. E. Twogood."

Pursuant to the authority thus conferred upon him, defendant sold the machine, with some other property, which is in dispute, to one Guinn, for the sum of $425; taking his notes therefor, secured by mortgage upon the property sold. These instruments were taken in the defendant's name. Before this sale occurred, plaintiff became further indebted to the defendant on book account; and, after the writing of the letter to which we have referred, plaintiff sent defendant a draft or check for $100, part of which was applied to the payment of this book account, and the balance, after meeting some expenses for the repair of the threshing outfit, was applied on plaintiff's notes. Plaintiff contends that defendant sold to Guinn certain property, which was not covered by the mortgage on the threshing outfit, and was no part thereof; that he had no authority to make the repairs and to charge the same to the plaintiff; that defendant is indebted to him for certain labor performed; that the mortgage indebtedness was satisfied by the sale of the machine to Guinn; and that defendant is indebted to him for the conversion of the property. Defendant denies the alleged conversion, and pleads payment of the work and labor performed; that he sold the machine to Guinn as plaintiff's agent, and held the note and mortgage given therefor as security; that he has credited all payments made by Guinn upon his notes upon plaintiff's notes; and that a balance remains due on these last-mentioned notes, for which he should have judgment.

The question of the conversion of the thresher outfit, proper, is out of the case, for the reason that the sale thereof was authorized by the plaintiff. And the only question here is, did defendant agree to accept the purchase price, or the

evidence thereof, received from Guinn, in satisfaction of plaintiff's indebtedness? If he did, then, of course, he has no right of action on plaintiff's notes; and plaintiff would be entitled to judgment for the value of any property converted by the defendant, and for any labor performed by him which has not been paid; and also for penalties for not releasing the chattel mortgages. Whether or not the proceeds of the Guinn sale, whether money or notes, were to be accepted by defendant, in satisfaction of plaintiff's notes, is a question of fact, which is to be solved largely from a consideration of the correspondence which we have quoted. This correspondence is in crude language, and it is somewhat difficult to understand just what the parties intended. Plaintiff, in his letter, uses the words "satisfy" and "pay;" but, taking the correspondence as a whole, and construing it in the light of the surrounding facts and circumstances, we are inclined to think that defendant's version of the affair is the true one. The matter was to be left to defendant's judgment, and the machine was to be sold for the purpose of satisfying or paying plaintiff's claim; but the sale itself was not to be a satisfaction, unless the proceeds therefrom were sufficient to accomplish that end. On no other theory can we explain the sending of the check or draft for $100 after the arrangement was made. If plaintiff regarded the whole indebtedness satisfied by the arrangement between him and the defendant, we should hardly expect to find him sending the defendant money after that time. Without setting forth more of the evidence upon which we base our conclusions, it is enough to say that we find with the defendant on this issue. Defendant has made proper credits of all amounts paid him by Guinn. As to the other items claimed by plaintiff, they are small in amount, and were disposed of by the trial court as we think they should have been. No good purpose would be subserved by setting out the evidence on which we base our conclusions. Suffice it to say that plaintiff's rights in and to

the unpaid Guinn notes and the mortgage first given to defendant on the separator, etc., were fully protected.

Defendant had judgment for the balance due on his notes made by the plaintiff, after deducting proper credits, and the decree, as a whole, seems to be correct. It is therefore *affirmed*.