BENNETT SAVINGS BANK et al., Appellees, v. W. S. SMITH et al., Appellants.

**PARTIES:** *Joinder—Maker of Note—Assignee Assuming Payment*
1 *—Foreclosure.* Several parties who are bound for the same debt but on different contracts may be joined in the same suit. So *held* in an action against the makers and endorsers of a note and one who had assumed its payment. (Sec. 3465, Code, 1897.)

**VENUE:** *Foreclosure—Assignee Assuming Payment.* An assignee
2 of lands, who has assumed the payment of the mortgage thereon, is not, in an action of foreclosure properly brought in the county where the land is situated, to which action he is a party, entitled to a change of venue to the county of his residence (Sec. 3504, Code, 1897), because (a) such assignee is a necessary party to the action (Sec. 3462, Code, 1897), and (b)

such action to foreclose must be brought in the county where the land is situated (Sec. 3493, Code, 1897).

JURY: Right To—Waiver. He who proceeds to trial to the court without objection waives his right to a jury. (Sec. 3733, Code, 1897.)

JURY: Equitable Action—Injection of Law Issues by Defendant —Right to Jury. A defendant who presents a law issue in an action properly brought in equity has no right to a jury trial thereon.

MORTGAGES: Merger—Intention. Merger implies two distinct estates meeting in the same person at the same time. Then, again, merger is essentially bottomed on the matter of intention. *Held*, that the facts furnish no ground for the application of the doctrine of merger.

PRINCIPLE APPLIED: B owned land and conveyed to A. A executed a note to B and secured the same by mortgage on said land. B assigned the note and mortgage to a bank. Later, B again became the owner of the land by conveyance from A, nd conveyed to S, who assumed and agreed to pay said mortgage. The bank brought suit to foreclose against A, B, and S, whereupon B took an assignment of the note and mortgage from the bank and was substituted as plaintiff. *Held*, neither the act of B in acquiring title to the land from A, nor the act of B in taking an assignment of the note and mortgage from the bank, furnish any ground for applying the doctrine of merger.

EVIDENCE: Estoppel—Laches—Belated Claim—Assumption of Mortgage Debt. Long delay in making complaint as to the correctness of a contract, while enjoying the benefits thereunder, may preclude one from questioning the correctness of such contract.

FRAUD: Representations — Statements as to Value — Opinion. Certain statements held to be simply matters of opinion and to furnish no basis for a charge of fraud.

*Appeal from Linn District Court.*—HON. F. O. ELLISON, Judge.

MONDAY, MAY 17, 1915.

REHEARING DENIED SATURDAY, SEPTEMBER 25, 1915.

SUIT for foreclosure of mortgage resulted in decree as prayed, from which W. A. Smith appeals.—*Affirmed.*

*J. S. Dewell* and *C. O. Boling,* for appellant.

*F. J. Casterline & Son,* for appellees, Wm. Bierkamp, Jr., and the Bennett Savings Bank.

LADD, J.—William Bierkamp, Jr., was owner of a livery barn and four lots in Bennett, and conveyed them to Albert Bierkamp. The latter, on August 6, 1906, executed his promissory note for $2,500, payable in five years and bearing interest at the rate of 6 per cent. per annum, to William Bierkamp, Jr., and to secure same, a mortgage on said property. This note and mortgage were assigned to the Bennett Savings Bank. Subsequently Albert Bierkamp conveyed the property back to William Bierkamp, Jr., and the latter, exchanging it for Fortune Dyke mining stock, executed a deed July 19, 1909, of the same to W. A. Smith, with usual covenants of warranty and containing a stipulation that ''the second party assumes and agrees to pay a mortgage on the said described property of $2,500 with interest at 6 per cent. from June 15, 1909''. As the note and mortgage were not paid at maturity, this suit for judgment and foreclosure was begun December 4, 1911, the Bierkamps and Smith and his wife being made parties defendant. Thereafter the bank assigned the cause of action to William Bierkamp, Jr., and he was substituted as party plaintiff. Certain motions were overruled, an answer filed, a hearing had on the merits, and decree of foreclosure entered as prayed. Only the questions raised in argument will be given consideration.

I. The defendant Smith moved that plaintiff be required to elect whether he would prosecute his cause of action on the note or on the assumption of its payment in the deed, and that upon such election, the other cause of action be dismissed. The motion was rightly overruled. Sec. 3465 of the Code provides: ''Where two or more persons are bound by contract or by judgment, decree or statute, whether jointly

1. PARTIES:
joinder: maker
of note: as-
signee assum-
ing payment:
foreclosure.

only, or jointly and severally, or severally only, including the parties to negotiable paper, common orders and checks, and sureties on the same or separate instruments, or by any liability growing out of the same, the action thereon may, at the plaintiff's option, be brought against any or all of them." In this action, Smith, in the deed, assumed and agreed to pay the note and mortgage, and thereby became primarily liable therefor, and the makers merely sureties for him. *Corbett v. Waterman*, 11 Iowa 86; *Marble Savings Bank v. Mesarvey*, 101 Iowa 285. This being so, though liability arose on separate instruments, both might, under the express language of this section, be made parties. See *Swartley v. Oak Leaf Creamery Co.*, 135 Iowa 573; *Darling v. Blazek*, 142 Iowa 355; *Bossingham v. Syck*, 118 Iowa 192. There being no misjoinder, the motion was rightly overruled.

II. Defendant Smith, being a resident of Harrison county, moved for a change of venue to the district court of that county; for that, as is said, he is liable on a contract, if at all, separate and independent of the note and mortgage, to which he was not a party. The motion was overruled. Sec. 3493 of the Code exacts that "An action for the foreclosure of a mortgage of real property, or for the sale thereof under an incumbrance or charge, or to enforce a mechanic's lien thereon, shall be brought in the county in which the property to be affected, or some part thereof, is situated." As Smith held title to the property, he was a necessary party to the proceeding, for only by making him a party could his equity of redemption be cut off. *Porter v. Kilgore*, 32 Iowa 379; *Tucker v. Silver*, 9 Iowa 261. See cases collected in 9 Ency. P. & P. 305. As suit must have been brought in Cedar county and Smith was a necessary party, his motion for change of venue was rightly overruled. This conclusion was not obviated by any offer on his part to reconvey the land, for neither the bank nor Bierkamp was under any obligation to accept a conveyance in satisfaction of the indebtedness.

2. VENUE: foreclosure: assignee assuming payment.

III. But it is argued that Smith was entitled to a jury trial of the issues involving his personal liability for the debt. In the first place, he proceeded to trial to the court and thereby impliedly waived a jury, if he had a right thereto. *McGuire v. Kemp*, 3 G. Greene 219; *Hawkins v. Rice*, 40 Iowa 435. In the second place, the cause was properly on the equitable side of the calendar, and the interposition of a defense at law was not ground for the transfer to the law side, even if such a motion had been made, nor was there error in exacting its trial to the court without the intervention of a jury. *Evans v. McConnell*, 99 Iowa 326; *Eller v. Newell*, 159 Iowa 711.

3. JURY: right to: waiver.

4. JURY: equitable action: injection of law issues by defendant: right to jury.

IV. From the statement of facts, it will be recalled that William Bierkamp, Jr., conveyed the land to his brother Albert, and the latter executed back to William the note and mortgage sued on, which William assigned to the bank. Subsequently, Albert conveyed the land back to William, and he to Smith. It is now contended that when William acquired the cause of action by assignment from the bank, this assignment operated to satisfy the mortgage under the doctrine of merger. It did not purport to be his debt and he did not hold the legal title to the land. Moreover, it appears there was no design to satisfy the debt or discharge the incumbrance, but on the contrary, the assignment was for the express purpose of transferring the cause of action to William Bierkamp, Jr., to enable him to enforce the claim. In these circumstances, there is no room for the inference that there was a merger. But it is said that, upon the conveyance of Albert to William, this happened. Such a result was obviated by the bona fide ownership of the security by the bank. It was not a case of ownership of the hypothecated property and the debt merging in one person, as in *Byington v. Fountain*, 61 Iowa 512, and *Fouche v. Delk*, 83 Iowa 297. There was no merger.

5. MORTGAGES: merger: intention.

V. The exchange was made through one Townsend as agent. He was acting under written instructions from Smith in disposing of Fortune Dyke mining stock. On May 12, 1909, Townsend wrote Smith, saying:

6. EVIDENCE: estoppel: laches: belated claim: assumption of mortgage debt.

"The livery and feed barn being incumbered is not what I would call gilt-edged by any means, but I do believe that it will deal for a good automobile and maybe two of them, and do it a whole lot quicker than the mining stock will go. My idea is that an offer of say 16,000 shares of common or 8,000 shares of the preferred and get the equity, then to pound the equity for automobiles or some cheap land. This party says that the property was appraised by the directors of the local bank in Bennett and they loaned $2,500.00 on it, or half the appraised value. If you say so, I will offer him the stock as above for the barn."

On the back of the letter Smith endorsed his instructions: "You can make offer 4,000 preferred and 16,000 common, making 20,000 in all."

With Townsend's letter was enclosed typewritten circular from Bierkamp, in words in part:

"A livery, feed and sales barn, located centrally and on the main street, covers four lots 100 by 140 feet. Lots alone worth $3,200.00 or $4,000.00. Barns, feed yard, office, high fence, all new, and cost $3,000.00 to $3,500.00 to build. Only barn of its kind in town and would be a money-maker for hustler, as Bennett is located on a branch railroad with only two passenger trains daily. Property ought to rent easily for $40.00 or $50.00 per month. The local bank has a $2,500 loan on it at 6 per cent., equity $3,500.00 if taken soon. $2,500.00 insurance."

Townsend testified that he accepted these representations without examining the property, that he received the deed

to Smith of the Bennett lots and forwarded it with the
abstract to him for examination before the deal was closed,
and that he recalled no complaint from Smith with reference
thereto, and that there was nothing said, in making the
exchange, about Smith's assuming or paying the mortgage.
Smith's testimony limits Townsend's agency to exchanging
for property unincumbered, and he says that it was not
represented that he was to pay the mortgage, that he has no
recollection of ever having seen the deed until receiving it
from the bank in September, 1912; that he relied on Bier-
kamp's circular letter and that he never examined the abstract.
The property at that time was worth about $2,000.   As seen,
the date of the deed was July 19, 1909, and September 9th
following, the cashier of the bank wrote Smith for the papers
"belonging with the loan" on the livery stable, advising that
the interest was due, and if not sent, another abstract would
be procured and expense thereof added to the mortgage.
Smith responded, on September 10th:

"I am in receipt of yours of the 9th and in reply will say,
this is the first communication that I have received, and will
send all of the papers to you including the deed and check for
$30.00 to help pay on interest and expenses of insurance, and
I wish you to rent the property if it is not rented.   Keep the
rents and keep up the insurance and do what you think is for
the best, and I wish you would tell me about what the prop-
erty is worth, if anything above the incumbrance of $2,500.00.
I just found your other letter mixed up with the papers that
was sent to me.   I will close, hoping to hear from you, I
remain."

The cashier acknowledged receipt of enclosures Septem-
ber 13th, and omitting same said:

"The barn is renting for $15.00 per month and to a good
tenant, who will continue to occupy it.   Please advise me
from what date you are to receive the rent?   No doubt you

are to have the rent for some time back. Relative to the value of the barn. It is a little hard for me to say just what it is worth. I should think some little over and above the mortgage, however. I will try to look after the property for you in a manner that will be satisfactory to you, and you may write me freely as to anything you might wish done.

"Yours very truly,

"E. P. Wingert, Cashier.

"I presume you want me to have the deed from B., Jr., to you recorded. Please advise."

Smith replied September 17, 1909, as follows:

"Yours of 13th at hand in regards to rent. The rent belongs to me from the time I commenced paying interest on the loan. Hold all rents to pay interest and taxes and insurance and anything that you lack to do this make draft through State Savings Bank, Mo. Valley. Thanking you for tending to this business. Have the deed recorded in my name."

Smith continued in possession of the premises through tenants until July 19, 1911, when he wrote that "If don't get a chance to sell it I shall let the mortgage take it." He testified that he did not know, until about this time, that the deed contained the assumption clause; but he had accepted it when tendered in compliance with the conditions of the agreement to exchange properties, had mailed the same to his agent and directed him to have it recorded. In these circumstances, the language of the deed must prevail. Nor do we think the record such as to warrant the inference that

7. FRAUD: representations: statements as to value: opinion.

he was deceived into the exchange of properties with Bierkamp. Shortly after the deal, he inquired of his agent at Bennett "what the property is worth, if anything above the incumbrance of $2,500.00," and was answered, "Some little over and above the mortgage." With this information, he caused the deed to be recorded and enjoyed the possession and use of the prop-

erty about two years without complaint, and until foreclosure proceedings were threatened. Moreover, the circular on which Smith claims to have relied is not shown to have been untrue in any particular except the value of the property, and this, under the circumstances disclosed, was a mere expression of opinion. Nothing in the communications of Bierkamp which were mailed from Denver, Colo., indicated any claim on his part of special knowledge concerning the property or tended to deter the fullest investigation by Smith, nor was there any evidence tending to show that he was aware that neither Smith nor his agent knew the value of the property. In other words, there is nothing in the record to justify construing what was said as representation of fact as distinguished from a mere opinion. *Hetland v. Bilstad*, 140 Iowa 411. Moreover, Smith exchanged mining stock which proved worthless, and with no estimated value,—a part of that he was exploiting through Townsend,—and, as clearly appears from the latter's letters, with the notion of taking chances of getting something out of it easier than from stock. We are satisfied that no fraud was perpetrated, and that the decree should be and it is—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.