WILLIAMSBURG SAVINGS BANK, Appellee, v. JOHN DONOHOE et al., Appellees; T. F. DONOHOE, Appellant.

TRIAL: Transfer of Causes—Equitable Proceedings—Law Issue—Nonright to Transfer. The guarantor of a promissory note who is properly joined with the makers in equitable proceedings to foreclose the mortgage given to secure the note, is not entitled to a transfer to the law calendar even though the makers, by defaulting and suffering judgment, leave no issue for trial in the equitable proceedings except

the guarantor's liability *at law* on his guaranty. (See Book of Anno., Vol. I, Sec. 10947.)

GUARANTY: Validity—Fraud—Evidence. Evidence on the issue of
2  fraud in the signing of a guaranty reviewed, and held insufficient to overthrow a judgment against the guarantor.

Headnote 1: 21 C. J. p. 138; 38 Cyc. p. 1292. Headnote 2: 28 C. J. p. 1030.

*Appeal from Iowa District Court.*—R. G. POPHAM, Judge.

MARCH 8, 1927.

Action upon a promissory note, against the makers and a guarantor, and to foreclose a mortgage. Decree as prayed, and T. F. Donohoe, as guarantor, alone appeals.—*Affirmed.*

*John E. Stapleton, James P. Gaffney,* and *Walter M. Davis,* for appellant.

*Wallace & Claypool,* for appellee.

STEVENS, J.—On March 7, 1923, John and Rose Ann Donohoe executed their promissory note for $10,133.50 to the Williamsburg Savings Bank, of Williamsburg, Iowa, due March 1, 1924, together with a mortgage upon certain real property in Iowa County, to secure the payment thereof. Subsequently, an indorsement was written on the back of the note, and signed by the makers and appellant, as follows:

"December 16, 1924.
"We hereby request extension of time on the within note to the first day of July, 1925, and hereby agree to pay and guarantee the payment of said note on July 1st, 1925, and hereby waive presentment for payment, protest and notice of protest and diligence in bringing suit thereon.

"John Donohoe
"Rose Ann Donohoe
"T. F. Donohoe

"Above extension granted.

"A. H. Evans, Pres."

On September 5, 1924, the date of the first memorandum,

an additional mortgage was executed, to secure the payment of the said note, in which the date of the maturity thereof is given as January 1, 1925. This action upon the note and to foreclose the mortgage was commenced September 1, 1925. The cause of action against T. F. Donohoe, appellant, is based upon the written agreement, dated and purporting to have been signed by him and his codefendants December 16, 1924.

The makers of the note defaulted, no appearance having been entered for them in the district court. Appellant, however, on October 16, 1925, filed answer, in which he denied the allegations of the petition, set up certain matters as a defense, to which reference will be made later, and asked that the cause of action against him be transferred to the law docket, for trial to a jury. This motion was never ruled upon. After default had been adjudged against his codefendants, appellant filed a motion to strike parts of the petition, upon the ground of a misjoinder of causes of action, and in the alternative to require the plaintiff to separate his cause of action into counts. Later, and on the day the case was reached for trial on the issues joined between appellee and appellant, appellant again moved the court to transfer the same to the law docket for trial to a jury, upon the ground that no equitable issue was left in the case for trial. All of the motions of appellant were overruled, and a trial was had to the court, resulting in a personal judgment against him for the amount due on the note.

1. TRIAL: transfer of causes: equitable proceedings: law issue: non-right to transfer.

I. We will first dispose of appellant's contention that the motion to transfer the cause to the law docket should have been sustained. The cause of action alleged against him was on the alleged written agreement of December 16th, guaranteeing the payment of the note; and, if it had been prosecuted as an independent action, it must have been at law. The obligation of the defendants John, Rose Ann Donohoe, and appellant was both joint and severable. The agreement of appellant was to pay the note signed by his codefendants. They might, therefore, properly have been joined in an action at law on the note. Section 10975, Code of 1924. Could they, however, properly be joined in an action in equity? There can be no question but that the cause of action against the defaulting defendants, which was to foreclose a mortgage given to secure the payment of the

note in suit, was cognizable in equity. The question, therefore, is: Was the cause of action against appellant properly joined with the equitable action against the other defendants? The question is not an open one in this state. This court has repeatedly held that an action at law may be joined with a cause of action properly brought in equity. *Bennett Sav. Bank v. Smith,* 171 Iowa 405; *Aplin v. Smith,* 197 Iowa 388; *Gilmore v. Shearer,* 197 Iowa 506.

Section 10947 of the Code of 1924 provides that, where an action has been properly commenced by ordinary proceedings, either party may have the right, by motion, to have any issue presented therein heretofore exclusively cognizable in equity transferred to that side of the docket for trial; and that, if all of the issues were heretofore cognizable in equity, though not exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings. This statute does not provide in terms for the transfer of law issues arising in an action properly commenced in equity to the law docket for trial. If, however, the action is properly commenced at law, equitable issues arising therein may be transferred, on motion, to the equity docket for trial. *Fleener v. Nugent,* 185 Iowa 701. On the other hand, where a cause of action is properly commenced in equity, the court will retain jurisdiction for that purpose, and determine the legal issues presented. *Crissman v. McDuff,* 114 Iowa 83; *Lutton v. Baker,* 187 Iowa 753; *Tinker v. Farmers St. Bank,* 178 Iowa 972; *Eller v. Newell,* 159 Iowa 711; *Frost v. Clark,* 82 Iowa 298; *Wilkinson v. Pritchard,* 93 Iowa 308; *Ryman v. Lynch,* 76 Iowa 587; *Johnson v. Carter,* 143 Iowa 95.

It is true that the only issue for trial after default was made by the defendants John and Rose Ann Donohoe was for the recovery of a money judgment. The action, however, was originally properly commenced in equity, and appellant was not entitled to have any part thereof transferred to the law docket for trial to a jury. We find nothing in *Lutton v. Baker,* supra, to the contrary. If an error has been made by the plaintiff as to the form of the action, the cause shall not abate or be dismissed, but will be merely transferred to the proper docket for trial. Section 10947. All that is held in *Lutton v. Baker* is that, even if a cause of action is, on the face of the petition, properly brought in equity, if there is a failure of proof to sus-

tain it in that forum; the court, on motion, will transfer it to the proper docket for trial. · This is in harmony with the statute and the prior decisions of this court. *Reiger v. Turley*, 151 Iowa 491; *Johnson v. Carter;* 143 Iowa 95. It is, of course, conceded that the cause of action on the note against the makers and to foreclose the mortgage was properly brought in equity; and that there could be no failure of proof to sustain the action in that forum. The motion to transfer was, therefore, properly overruled.

II. Appellant admits the genuineness of his signature on the back of the note, but asserts that, when he signed it, he thought it was one of four smaller notes previously signed by him as surety for his brother. This contention presents the principal question in the case. The testimony of the witnesses is utterly irreconcilable, and there are circumstances both supporting and contradicting the claims of the respective parties. John Donohoe was one of the customers of the appellee bank. Appellant, his brother, resided some distance away, but had occasionally signed notes payable to appellee, as security for John. On and prior to December 16th, appellee held four such notes, as follows: one for $875, dated February 28, 1924, payable in 30 days after date; one for $165, dated September 29, 1924, due 60 days after date; one for $1,978.74, dated September 23, 1924, due 90 days after date; one for $400, dated September 29, 1924, and due four months after date. The time of payment of the $875 note had been, previous to December 16th, extended to January 1, 1925. The evidence without conflict shows that appellant signed the writing on the back of the note in suit; also a similar writing on the back of the $875 note and the $165 note; and in addition thereto, a note of $425, as surety for John. These instruments were signed at a sale in the country, in the afternoon of a foggy day, in a woodshed, which appellant claims was somewhat dark. The meeting of the parties at the sale had been previously agreed upon. John Donohoe needed money with which to pay interest about to mature upon two mortgage loans. He applied to the bank therefor, and was informed that he could have it if he would procure his brother to sign the note with him. Later, appellant visited the bank, and promised to sign the note, saying, however, that he desired to see John first. On this occasion;

2. GUARANTY: validity: fraud: evidence.

or later, it was agreed to meet at the sale on December 16th. The president of the bank clerked the sale, taking with him all of the notes referred to, except the one for $1,978.74, and also the $425 note, which appellant had agreed to sign. The former note was overlooked, or left at the bank by mistake. Appellant testified that nothing was said to him on December 16th or at any other time about his signing the note in question, and denied that he knew of its existence. He further testified that he was first informed that he had signed the instrument in April, 1925, when his brother told him. The evidence shows that, about that time, appellant went to the bank and demanded that his signature be erased, or taken off the note.

One outstanding fact in the case is that, if appellant's signature to the note was fraudulently procured, it was the result of plans carefully and deliberately laid by the president of the bank. There was no mistake upon his part. The guaranty signed by appellant was written upon the back of the instrument by a stenographer, from dictation by an attorney employed by the president for that purpose, before going to the sale. The president testified that he had, on prior occasions, talked with John about his brother's guaranteeing the payment of the note, and that he had told John that he would not loan him the money to pay his interest unless Tom, appellant, guaranteed payment of the other note. John never talked to appellant about the matter, nor had there been any conversation between appellant and the president about it, prior to December 16th. The president testified that he then informed appellant that he would not loan John the $425 necessary to pay his interest unless appellant would sign the guaranty already written on the back of the note in question; that appellant took the note, looked it over, apparently read it, and said, "Well, John will come out all right, if given a chance," or words to that effect, and signed it. Appellant denied that any such conversation occurred. It is claimed by appellee that the signatures of John and Rose Ann Donohoe were subsequently signed to the agreement. Appellant testified that their signatures preceded his upon all instruments signed by him, and John denied signing it after appellant. It is argued, and with considerable plausibility, that appellant would not have assumed an obligation to pay a note of more than $10,000 for the sole purpose of aiding his brother to secure a

loan of $425. In this respect the transaction is unusual. If appellant's guaranty was good for $10,000, he could readily have aided his brother to get the amount needed elsewhere. John Donohoe denied that he ever had any conversation with the president or any officer of the bank about appellant's signing a guaranty on the back of the note as a condition precedent to the loan he was seeking, or that appellant was referred to in that connection in any other way than as surety on the $425 note.

The case made by appellee can only be met by proof of actual fraud on the part of the president of the bank. This is neither alleged nor satisfactorily established by the evidence. No one can be sure that an injustice may not result either way; but, in our opinion, the evidence fairly sustains the finding of the district court, and its judgment is affirmed.—*Affirmed.*

FAVILLE, VERMILION, and ALBERT, JJ., concur.

EVANS, C. J., not participating.