M. V. PACE, Appellee, v. C. E. MASON et al., Appellees; W. E. OXFORD, Appellant.

OCTOBER 16, 1928.

*F. D. Wisdom,* for appellant.

*M. R. Brant* and *James R. Locke,* for appellee.

796

MORLING, J.—I. Plaintiff's right to recover the principal of the note is undisputed. We inquire first into his right to interest. The record shows that, under date of November 17, 1923, the Masons conveyed to the plaintiff the mortgaged premises by warranty deed, recorded the same date, and, under date of November 16, 1923, gave to plaintiff a chattel mortgage on 10 head of milk cows, 60 head of swine, 16 horses and mules, and other live stock, and farm machinery, and other property. This chattel mortgage was recorded November 17, 1923. Plaintiff's reply admits Oxford's allegation that, at the February term, 1925, of the district court, judgment was entered, subjecting this property to, the payment of Oxford's judgment. The record shows that the court also adjudged Mason's deed to Pace of the real property to. be fraudulent as to Oxford, and established Oxford's judgment as a lien upon the real property, "except as to one mortgage. of. $800 held by the defendant M. V. Pace" (plaintiff here). Defendant Nellie Mason is the plaintiff's daughter. Plaintiff and C. E. Mason were witnesses called in plaintiff's behalf. Oxford has the burden of proving his allegation of payment of interest. Pace, however, testifies:

"The interest was paid up till the first of that month. Q. Till the first of March, 1926? A. Yes. Q. The interest was paid up? A. Yes, sir. Q. So you weren't bothered at all about the rents—didn't care what became of those? A. I went on from that, on collecting the rent. Q. Then you applied that on the interest that accumulated after March 1, 1926? A. No, you see I had the place when I took it. Q. How did you get the place? A. He deeded it to me. * * * Q. You are referring to the deed from Mason and his wife made to you for the New Market (mortgaged) property? A. Yes. Q. And that the court set aside because of the fraud? A. Yes. Q. Did you ever get any other deed from Mason? A. No, I just got that deed."

Plaintiff, therefore, testifies to the payment of interest "till the first of March, 1926." He gave, however, contradictory testimony. In considering this, account must be taken not only of his interest and of his relationship to the Masons, but of his established participation in conveyances to him in fraud

of Oxford's rights. His fraudulent disposition is shown also by his testimony. His fraud does not, however, establish the alleged payment of interest, but the unguarded answers of one disposed as plaintiff was toward Oxford are of more value as evidence than his guarded and hedging testimony given in attempting to urge or to serve his own interest or the interest of his daughter and son-in-law.

As has been noted, the deed of the mortgaged property from the Masons to Pace is dated November 17, 1923. The trial of this action was had on April 27, 1927. Defendant C. E. Mason testifies that this deed was "intended to convey the title absolutely."

"Q. Which way did you swear to at the trial of that case in 1925? A. I don't know. Q. Then you say that you testified at that time that deed was absolutely? A. No, I am not sure what I said, but I should have. * * * Q. You ceased to have any interest in it after you executed the deed, and nothing to do whatever, and authorized him to collect for the rents? A. Yes. Q. And so far as you know, he has continued to do that? A. Yes, sir."

He also testifies:

"Q. Have you paid any interest or principal on that note since the last indorsement on there,—on the note which was for the year 1920,—first of the year 1920? A. No, sir."

Literally, this answer may be true, and the interest still be paid.

Pace testifies that the interest was paid until October 21, 1919, and for 1920, according to indorsements on the note. "Q. Have any payments been made on that since that time? A. No, sir, not that I remember of." He also testified:

"Q. How long have you been collecting the rents from the premises described in this mortgage you are foreclosing? A. Let's see—a year—this last March, a year. Q. March, 1926? A. Yes. Q. Do you remember being on the witness stand here in February, 1926? A. Yes. Q. Do you remember anything that you testified to at that time? A. No, I don't. Q. Do you remember whether or not you didn't at that time state that you had been collecting the rents on that New Market property

covered by your mortgage,—didn't you tell this same court at that time that you had been collecting the rents on the New Market property covered by that mortgage? A. From March the 24th,—let's see— * * * year ago last March is all. Q. Then you didn't tell this same court— A. Before that, I didn't collect it. Q. Who did? A. Mason, I guess. [Here follows Pace's testimony to the payment of the interest until March 1, 1926, above quoted.] You didn't collect the rent on that place until after March, 1926? Is that right? A. I think that is right; yes, a year ago this last March. Q. And you didn't collect the rent because your interest was paid? A. No, my interest hadn't been paid. Q. A while ago you said that interest had been paid on your note, and you didn't collect it until after March 1, 1926. A. Didn't collect the rent, I told you. Q. Why didn't you collect the rent prior to that time? A. Paid it over to Mason * * * Brown moved in the place in August, 1924. He stayed there just about a year. He paid $12.50 rental. * * * I don't know what he paid him. Paid me monthly. * * * When Brown moved out of the place, a man by the name of Arthur Gray moved in. Gray moved in about September 1st, 1925. He stayed there just about a year. * * * Q. Did he give you a check or cash? A. Check. Q. How did Brown pay,—did he pay by check or cash? A. He paid cash some of the time, check part of the time. Q. Did he make the check payable to you? A. Yes, sir. After Gray vacated the premises, a man by the name of Jones lived there. He moved in about September, 1926. He stayed there until the first of this last March. He paid a rental of $14. * * * He did not pay it to me. He paid it to my daughter. * * * She collected it for herself, * * * because I had sold her the place. * * *. Q. Tell me the date you sold her the place. A. I think it was in December; I wouldn't say for sure. * * * Q. In 1925? A. About that time, I think, as far as I can remember. * * * I made her a deed. Q. You say you collected the rent from the place for the last year and a half? A. No, I didn't collect it, my wife did—my daughter did. Q. You said a while ago you collected it. A. No, I said I collected from the second time up till a year ago last March. After I made her this deed in December, then I let her collect it. Q. What period was it since January, 1924, that you collected the rents from that place? A. I couldn't tell you now,

\* \* \* Well, I made the deed to her, and had the trade all made. Q. I want to know how much money you collected in rent from that place. A. I collected it about a year. Q. When? A. From one March to the next. Q. What year? A. 1925 or 6, —I wouldn't say which. Q. How much did you collect in 1924? A. I don't know now how much. Q. How much did you collect in 1925? A. Well, sir, I couldn't tell you. Q. In 1926, how much? A. I don't know. Couldn't tell you anything about that; for I didn't keep any track of it."

Pace also testified:

"I do not have any book or any written memoranda of my transactions with the Masons."

He also testified that:

"I never collected any rent and applied it on this note. I never collected any until after that deed."

After recess, he was recalled and testified in his own behalf:

"Q. You said something this morning about receiving some rent on the premises now in controversy here,—have you a memorandum whereby you could state how much rent you received? A. I think I had some papers. I think $129 I received of rent, and $206 I used up in the repairs."

He was asked to "read off the items, if you can, and tell the court what they were—repairs," and given a number of items. Asked how much taxes he paid in 1924 and 1925, he said, "$105, I believe,"—a total of $206.30.

After testifying, as above noted, that he could not tell anything about how much he collected in 1925 and 1926, he had said, "have spent it for clothes and for a living." On re-cross-examination:

"Do you recall this morning when I asked you if you had any memorandum or account of the rents you had collected from that house; and you said you had none? A. I told you I didn't remember as I had any. \* \* \* I forgot about them. Well, sir, I had them in my pocket, but I had forgotten it. \* \* \* Q. Who wrote those amounts down? A. Well, my daughter.

wrote them down when I told her. * * * It has been over a year ago, I guess. * * * Q. And where has the paper been since that time? A. Been at my house *. * * Q. When was it you owned the place? A. Well, now, I don't know as I could tell you the year I bought it. It was about 1924 or 1925. I had a deed for the place; I owned it absolutely * * * Q. So you remember during that trial when you swore from the witness stand here that you didn't own that New Market property under that deed, but that you merely took it as additional security? A. I don't remember it. * * * Q. Did you say the truth then or the truth now? A. I don't know. Q. Don't you know whether you told the truth then or you are telling it now? A. I don't know what I would say about it. I don't know what you have got there. * * * I was holding that for the mortgage."

On other subjects, the plaintiff gives the same kind of testimony. Mason testified, "I have kept memorandum as to the amounts I have paid on that note."

We are of the opinion that the plaintiff should be held to have told the truth when he said that the interest was paid until the first of March, 1926, and the decree should be modified accordingly.

II. Oxford assigns error in sustaining plaintiff's motion to transfer the cross-petition to the law docket. Plaintiff's motion is not to dismiss the cross-petition, or to strike or to make more specific. He in no wise assails its relevancy or attacks its validity as a cross-petition. The motion is "to transfer to the law docket the alleged cause of action pleaded by * * * Oxford * * * for the following reasons: that said Division II shows upon its face that it is a law action, cognizable at law, and not in equity; that this action is an action brought to foreclose, * * * properly triable by a court of chancery, and the cross-petition * * * is purely a law action, and is properly triable at law."

The cross-petition alleges that cross-petitioner is entitled to judgment against Pace and the Masons, "and equity demands that that judgment be made a lien upon any interest that the plaintiff herein, M. V. Pace, may have in and to the premises, * * *" and prays that "such judgment be made a lien upon any or all the interest of M. V. Pace in and to the note and

mortgage sued on in this action and the premises described in the plaintiff's petition. * * *'' Oxford was claiming relevant relief, and the propriety of the claim was not attacked by the motion. The plaintiff's claim is that the issue thus made should in this pending action be tried at law, while the issues tendered by plaintiff should be tried in equity. The case as made by plaintiff's motion, therefore, is that, as he brought a suit in equity, equitable issues tendered by him in that suit must be tried in chancery, and issues tendered by the defendant in that same suit are issues at law, and should be tried by ordinary proceedings. We therefore do not have before us the question whether Oxford has made out a case of equitable set-off. See 34 Cyc. 633 *et seq.* Oxford's purpose, on the face of his cross-petition, clearly was to plead such a set-off. Plaintiff relies on that sentence in Section 11155, Code of 1927, to the effect that the cross-petition is ''with the same right of obtaining provisional remedies applicable to the case.'' The right to move to transfer issues is not a provisional remedy, within the meaning of this statute. The right to provisional remedy thus given is to writ of attachment, temporary writ of injunction, appointment of receiver, order for examination, and other incidental and collateral proceedings of like character demanded by the occasion or required for present needs of the cross-petitioner, or to meet the exigencies in the effective maintenance of his cross-petition, and for the attainment and security of the relief sought. See 6 Words & Phrases 5752; 3 Idem (2d Series) 1319; 32 Cyc. 742.

Section 10942, Code of 1927, provides that action on note and for foreclosure of mortgage shall be by equitable proceedings. By Section 10947:

''Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings.''

Section 11429 says:

''Issues of fact in an ordinary action must be tried by

jury, unless the same is waived. All other issues shall be tried by the court, unless a reference thereof is made.''

This action was properly a case in equity. The plaintiff elected to pursue his remedy in a court of chancery. The statute makes no provision, in a suit properly brought and maintainable in equity, for transferring to the law docket issues at law arising on the answer, though it does make provision for transfer of equitable issues arising in an action properly brought at law. The statute decides the forum in which the issues are to be tried. When a suit is properly brought in equity, all issues arising therein are triable by equitable proceedings, without a jury. The statute does not, in such case, permit separation of issues for trial in different forums. *Eller v. Newell*, 159 Iowa 711, 715; *Fisher v. Trumbauer & Smith*, 160 Iowa 255; *Marquis v. Illsley*, 99 Iowa 135; *Wilkinson v. Pritchard*, 93 Iowa 308; *Ryman v. Lynch*, 76 Iowa 587; *Klopp v. Chicago, M. & St. P. R. Co.*, 156 Iowa 466, 469; *Crissman v. McDuff*, 114 Iowa 83; *Williamsburg Sav. Bank v. Donohoe*, 203 Iowa 257; *Bennett Sav. Bank v. Smith*, 171 Iowa 405.

Most, if not all, of the cases in which the question has arisen have been those in which the defendant has raised and attempted to have transferred issues at law, but the principle must be applicable, whether invoked by plaintiff or by defendant.

''As the statute expressly provides that the action shall be tried as an equitable one, the court had no right or authority, over defendant's objections, to order the case tried to a jury, and was not justified in shifting the responsibility to such a tribunal. The parties were entitled to the personal judgment and decision of the court; and the designation of the petition as one at law, instead of a petition in equity, did not warrant the court in refusing to try the issues, where the request was made before the trial was actually begun.'' *Klopp v. Chicago, M. & St. P. R. Co.*, 156 Iowa 466, 469.

See, also, *Marquis v. Illsley*, 99 Iowa 135; *Ryman v. Lynch*, 76 Iowa 587; *Wilkinson v. Pritchard*, 93 Iowa 308. *Federal Reserve Bank v. Geannoulis*, 203 Iowa 1385, does not lay down different doctrine. It refers to *Williamsburg v. Donohoe*, 203 Iowa 257. In the *Federal Reserve Bank* case, the cause of action

was at law, and action brought in the law court. The plaintiff claimed, as was his right, the provisional remedy by attachment.

"* * * in all cases the proceedings relative to the attachment are to be deemed independent of the ordinary proceedings and only auxiliary thereto." Section 12079.

The allegation of ground for attachment tendered no issue. It could not be contested in the action by mere defense. Code of 1927, Section 12091. As fully discussed in the opinion in the *Geannoulis* case, an equitable interest might, in the auxiliary proceeding, be as it was attached, a lien acquired, and such lien made effective by equitable proceedings. Those proceedings, however, were auxiliary, and, though they might be instituted before obtaining judgment in the main action, they were, nevertheless, collateral, and would be wholly void of purpose or effect if the main action should fail. The action was necessarily at law. The issues were at law. Defendants were endeavoring to control the main action by a purely collateral proceeding—to fly the kite by its tail.

The further principle is applicable that equity, having obtained jurisdiction, will proceed to the granting of complete relief, even though, by so doing, it decides matters of which a court of law ordinarily has exclusive jurisdiction. *Green Bay Lbr. Co. v. Miller*, 98 Iowa 468.

III. A part of the issues have been fully tried, and there is no good reason for retrying them,—that is to say, the amount to which the plaintiff is entitled on his note and mortgage, as hereinbefore determined. The issues arising on the cross-petition have not been tried. The defendant is entitled to the judgment of the court upon them, and the case should be remanded for trial accordingly. See *Kossuth County St. Bank v. Richardson*, 141 Iowa 738; *Boynton v. Salinger*, 147 Iowa 537, 548. The judgment appealed from will, therefore, be set aside, and the cause remanded for the complete determination of all the issues, and for such final judgment as the determination of all the issues may require.—*Reversed and remanded*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.