C. W. Holman, Appellee, v. Carl Wahner and Anna Wahner, Appellants.

Carl Wahner and Anna Wahner, Appellants, v. C. W. Holman, Appellee.

No. 43272.

June 19, 1936.

Volney Diltz, for appellee.

Howard L. Bump, for appellants.

KINTZINGER, J.—On August 3, 1934, C. W. Holman, as plaintiff, commenced an action at law against Carl Wahner and Anna Wahner for the possession of certain real estate in Des Moines, purchased by the Wahners in July 1933, on a contract of sale. On December 23, 1934, Carl Wahner and Anna Wahner, as plaintiffs, commenced an action in equity against said Holman for the cancellation of the forfeiture of the contract for the sale of said real estate, which was entered into between the Wahners and one J. W. White in 1933. As both actions were between the same parties and based upon substantially the same testimony, it was stipulated by the parties that a jury be waived in the law action, and that both cases be placed upon the equity assignment and tried together before the court in equity.

The evidence shows that Mr. and Mrs. Wahner owned a house and lot on Easton Boulevard, in Des Moines, which they had purchased on a contract for $3,500, payable in monthly installments, all of which had been paid prior to July 11, 1933, except $1,500. Mr. Holman, one of the parties hereto, was at the time in question a licensed real estate dealer in Des Moines. Prior to July 11, 1933, he learned that the Wahners desired a place with more ground near the edge of Des Moines. Holman called upon the Wahners and told them he knew of a party who had such a place, which they might get on a trade. They employed Mr. Holman to make a trade, and he showed them the property at No. 1207 East Aurora Avenue, in Des Moines, which he represented belonged to Mr. and Mrs. J. W. White. Holman and the Whites both told the Wahners that the Whites had a clear title to the place. Holman was White's father-in-law and also his agent, but this fact was not learned by the Wahners until several months later.

The Wahners allege that both Holman and the Whites represented that there was a good well on the White property. This was found to be untrue. The evidence shows without dispute that the purported well on the White property was only about

12 feet deep and contained no water whatever. The evidence also shows that it was necessary to obtain water from the neighbors. The evidence also shows without dispute that it would cost at least $80 to sink the well to a sufficient depth to obtain water.

A contract for the sale of the property on a trade was entered into on July 11, 1933. Under the agreement, Wahners' equity in their property was taken in at a valuation of $1,075, and the White property was taken in by Wahners at a valuation of $1,500. Thereupon, $1,075 was credited as a partial payment on the White property. This left a balance of $425 due thereon, which was to be paid in installments of $6.00 per month until paid.

The evidence shows that at the time of the transaction, the Whites did not have the legal title to the property traded by them, but held it under a contract of purchase from the Jackson Investment Company, under an agreement to pay the balance due at the rate of $15.00 per month. At the time of the trade, there was still a balance of over $800 due thereon. This fact was not discovered by Wahners until after they consulted a lawyer in March, 1934. At that time their installments were all paid to and including March, 1934.

Upon learning that the Whites owed the Jackson Investment Company more than double the amount due from the Wahners, they refused to make further payments until the Whites made all their payments to the Jackson Investment Company and produced an abstract showing title in them. After that, negotiations were had between the attorneys representing the Wahners, and Mr. Holman and the Whites. On May 9, 1934, the Jackson Investment Company served a notice of forfeiture of their contract with the Whites upon both the Whites and the Wahners, because of the Whites' failure to pay the installments due the Jackson Investment Company, upon which the Whites, on May 1, 1934, were $175 in arrears.

Thereafter, and on May 17, 1934, Holman, White's father-in-law, furnished White the necessary funds to pay the balance of about $825 due from the Whites to the Jackson Investment Company. Thereupon, that company conveyed the legal title to the Whites, who, on the same day, transferred the title to Holman. Thereupon, Holman, on the very same day, served a thirty day notice of forfeiture upon the Wahners because of their failure to make the payments due under their contract with the

Whites, up to and including May 17, 1934. At that time the Wahners were only two months in arrears.

Such are the facts as substantially disclosed by the record in this case, and upon such facts the lower court found the issues in favor of appellee Holman. Hence the appeal.

I. Where two separate actions, one at law and one in equity, between the same parties and involving the same subject matter, are submitted for trial to the same court, the one presenting the equitable issues should be tried first, and where under such issues one of the parties is entitled to relief of such a character that the conclusion reached therein would be controlling on the result of the issues presented in the law action, the conclusion reached under the issues presented in the equitable action is controlling of the judgment in the law action. Twogood v. Allee, 125 Iowa 59, 99 N. W. 288; Dille v. Longwell, 169 Iowa 686, 148 N. W. 637; Tinker v. Farmers State Bank, 178 Iowa 972, 160 N. W. 349; Groen v. Ferris, 189 Iowa 21, 176 N. W. 213.

The law action was for the forcible entry and detention of real estate. Under section 12280 of the Code of 1935, "an action of this kind cannot be brought in connection with any other, nor can it be made the subject of counterclaim." However, under the stipulation filed, it was agreed by both parties that the law action and the action in equity be placed upon the equity calendar and tried together without a jury, "upon one record, and any evidence offered by any party shall be considered by the court as evidence properly offered in either case relevant thereto, but * * * separate judgments or decrees (be) entered in each of the * * * causes."

Under such circumstances, the lower court, in the exercise of a sound discretion, should have determined the equitable issues first. Twogood v. Allee, 125 Iowa 59, 99 N. W. 288; Dille v. Longwell, 169 Iowa 686, 148 N. W. 637; Tinker v. Farmers State Bank, 178 Iowa 972, 160 N. W. 349; Groen v. Ferris; 189 Iowa 21, 176 N. W. 213.

A question very similar to the issues raised here was presented in the case of Groen v. Ferris, 189 Iowa 21, loc. cit. 26, 176 N. W. 213, 215, which was an action in replevin under which plaintiff claimed to be the unqualified owner of the property in question. In that case, plaintiff claimed to be the owner and

entitled to the possession of real estate, and the court therein said:

"His right to maintain the action depended upon the truth of this allegation, which, in turn, depended upon whether the attempted forfeiture of the contract would be sustained by the court. *It is unnecessary to cite authorities to the point that equity does not favor forfeiture,* and especially where the result thereof will be to give one party an unconscionable advantage over another."

A forfeiture in the case at bar might result in a serious loss and damage to appellants, and should, therefore, not be declared, unless the equities of the case so demand.

It is the settled rule of law that where a court of equity has once obtained jurisdiction, it will determine all necessary matters in the litigation even though some of them are ordinarily cognizable only at law. Penn Mut. Life Ins. Co. v. Doyen, 211 Iowa 426, 233 N. W. 790; Pace v. Mason, 206 Iowa 794, 221 N. W. 455; Clinton v. Shugart, 126 Iowa 179, 101 N. W. 785; Johnson v. Carter, 143 Iowa 95, 120 N. W. 320; Reiger v. Turley, 151 Iowa 491, 131 N. W. 866; Fisher v. Trumbauer, 160 Iowa 255, 138 N. W. 528, 141 N. W. 419; Williamsburg Sav. Bank v. Donohoe, 203 Iowa 257, 212 N. W. 555.

In Penn Mut. Life Ins. Co. v. Doyen, 211 Iowa 426, loc. cit. 433, 233 N. W. 790, 793, this court said:

"It is a general rule that, when equity has once obtained jurisdiction of a controversy, it will determine all questions material or necessary to the accomplishment of full and complete jurisdiction between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law."

In Pace v. Mason, 206 Iowa 794, loc. cit. 802, 221 N. W. 455, 459, this court said:

"This action was properly a case in equity. The plaintiff elected to pursue his remedy in a court of chancery. The statute makes no provision, in a suit properly brought and maintainable in equity, for transferring to the law docket issues at law arising on the answer, though it does make provision for transfer of equitable issues arising in an action properly brought at law.

The statute decides the forum in which the issues are to be tried. When a suit is properly brought in equity, all issues arising therein are triable by equitable proceedings, without a jury. The statute does not, in such case, permit separation of issues for trial in different forums. (Citing cases.) * * * Most, if not all, of the cases in which the question has arisen have been those in which the defendant has raised and attempted to have transferred issues at law, but the principle must be applicable, whether invoked by plaintiff or by defendant.''

After the commencement of the law action, appellants commenced an action in equity seeking to set aside the declaration of forfeiture on the ground of fraud. Appellants, the defendants in the law action, filed an answer setting up a general denial. They did not in that action allege any fraud as a defense thereto. The petition in equity commenced by appellants alleged acts of fraud upon the part of appellee and his grantors for which they claim a cancellation of the declaration of forfeiture.

■■■ Under the stipulation, both cases were placed in the equity assignment and tried to the court as an equity action without a jury. The stipulation and the conduct of the parties was, in effect, a consolidation of the actions, and a trial thereof in equity. While no actual order for consolidation as such was made by the court, it is our conclusion that the stipulation and the acts and conduct of the parties amounted to a consolidation of the actions. While no equitable defense was alleged in the law action, the allegations of appellants' petition and the issues raised in the equity action were sufficient to constitute a consolidation. The parties were the same, the issues were the same, and only a court of equity could give complete relief. Therefore, ''the equitable issues were such as to dispose of the entire controversy.'' In such event, the cases were properly considered consolidated and submitted in equity. Twogood v. Allee, 125 Iowa 59, loc. cit. 61, 99 N. W. 288; Groen v. Ferris, 189 Iowa 21, 176 N. W. 213.

Both actions being submitted as one, it was the lower court's duty to determine the equitable issues first, if it appeared that a disposition of the entire matter could be disposed of thereby. We will, therefore, first consider the record in relation to the equitable issues presented.

II. One of the reasons urged for a reversal of this case is that appellants had a greater claim against appellee for damages resulting from false and fraudulent representations made by appellee Holman and his grantors with reference to the existence of a good well upon the White premises.

■■■ We have carefully examined the evidence with reference to such alleged fraudulent statements, and it is our conclusion from the greater weight of the evidence that both the appellee Holman and his grantors, at and prior to the time the contract was entered into, represented to appellants that the White property contained a good well thereon. It is also our conclusion from the evidence that appellants relied thereon; it is also our conclusion from the greater weight of the evidence that the statements so made were false and fraudulent; that the purported well on the premises was only 12 feet deep and contained no water whatever. The evidence also shows without dispute that the sinking of the well to a depth necessary to produce good drinking water would involve an expense of not less than $80.00.

The evidence shows that on May 17, 1934, when appellee served notice of the alleged forfeiture upon appellants, they were in arrears only two months in the payments due under their contract, providing for payments of $6 per month. It necessarily follows that although appellants were two months in arrears, they had a valid claim of $80.00 against the appellee and his grantors for fraudulent representations relating to the well.

It is, therefore, our conclusion that as appellants' claim against the appellee at the time the notice of forfeiture was served upon them greatly exceeded the amount due on their monthly installments, appellee was not entitled to a forfeiture of the contract.

We are, therefore, constrained to hold that under the equitable issues presented, the appellants are entitled to a cancellation of the alleged forfeiture.

Other acts of fraud relating to the title of the White property were also alleged. It is our conclusion from the evidence offered that at the time the contract in question was entered into, both the appellee Holman and the Whites represented that the latter had a clear title to the property in question. It is also our conclusion that the delay in making the payments provided in the contract up to and including April 1, 1934, was caused by the failure of title in appellee's grantors, and in their failure to

make payments due the Jackson Investment Company under a contract held by them. In view of our finding upon the allegation of fraud in relation to the existence of a well upon the premises, further consideration of the fraudulent representations as to the title is unnecessary.

■■■ III. Another objection to the finding of the lower court is that appellee was not entitled to a forfeiture of the contract in question, because the contract itself, as disclosed by the record, contains no provisions for a forfeiture on a failure of either party to meet the conditions thereof. We have carefully examined the contract in question, and find no forfeiture provision therein. In the absence of such a provision, no forfeiture can be declared. Sections 12389 and 12390 of the Code of Iowa 1931.

Section 12389, authorizing a forfeiture, relates to contracts for the sale of real estate which provide *"for the forfeiture of the vendee's rights* in such contract in case the vendee fails, * * * to comply with said contract."

Under sections 12382 and 12383 of the Code of Iowa 1931, such contracts may be foreclosed as ordinary mortgages.

It is the settled rule of law in this state that "the statute relating to forfeitures under contracts of sale has application only to those cases where the contract itself makes provision for a forfeiture." Cody v. Wiltse, 130 Iowa 139, 144, 106 N. W. 510, 511; Frederick v. Davis, 133 Iowa 362, 110 N. W. 611; Waters v. Pearson, 163 Iowa 391, 144 N. W. 1026; Lake v. Bernstein, 215 Iowa 777, 246 N. W. 790, 102 A. L. R. 846.

In Cody v. Wiltse, 130 Iowa 139, loc. cit. 143, 106 N. W. 510, 511, we said:

"It will be observed that the contract in question does not provide that time shall be regarded as of the essence thereof, nor is there any provision for forfeiture. We have no occasion, therefore, to consider what would be the rights of the parties if such a provision had been embodied in the contract. And in the absence of any provisional agreement therefor, a mere failure to pay will not of itself work a forfeiture. Forfeitures are not favored in law, and equity will never lend its aid to the arbitrary cutting off of legal rights and interests, especially where otherwise the vendor has an adequate remedy for the enforcement of his rights. * * * The statute relating to forfeitures un-

der contracts of sale has application only to those cases where the contract itself makes provision for a forfeiture. Code, section 4299 [now section 12389].''

In Lake v. Bernstein, 215 Iowa 777, loc. cit. 780, 246 N. W. 790, 792, 102 A. L. R. 846, we said:

''Sections 12389 and 12390 of the 1931 Code provide for the forfeiture of real estate contracts. These sections were the same in the 1924 and 1927 Codes. If the contract to convey real estate provides for a forfeiture or makes time the essence of the agreement, and the vendee is in default, the forfeiture of the vendee's interest in the contract may be obtained by the vendor by serving the notice required under the foregoing statutes. * * * In the case at bar, there was no provision in the real estate contract for a forfeiture, nor was there a stipulation therein making time the essence of the contract. Consequently the appellant could not procure a forfeiture of Shute's interest in the real estate by serving notice of forfeiture. Frederick v. Davis, 133 Iowa 362, 110 N. W. 611; Cody v. Wiltse, 130 Iowa 139, 106 N. W. 510; Converse v. Elliott, 200 Iowa 1023, 205 N. W. 867.''

. Likewise under the contract in this case, as disclosed by the record, there is no provision for a forfeiture, nor is time made the essence of the contract. Therefore, appellee was not entitled to a forfeiture of the contract in question.

These cases having been consolidated and tried to the court as in equity, the result must follow the determination of the proceeding in equity for the reasons set out in Division I hereof.

For the reasons hereinabove expressed, we are constrained to hold that the judgment and decree entered by the lower court must be and is hereby reversed and the case is hereby remanded for a decree in harmony herewith.—Reversed and remanded.

DONEGAN, C. J., and STIGER, ANDERSON, ALBERT, and RICH-ARDS, JJ., concur.

HAMILTON, J., concurs in result.